STATE v. WARNER.

No. 5002.   Decided August 21, 1930.   (291 P. 307.)

See subsequent opinion, 79 U. 510; 13 P. (2d) 317.

*N. H. Tanner* and *F. W. James,* both of Salt Lake City, for appellant.

*Geo. P. Parker,* Atty. Gen., and *L. A. Miner,* Deputy Atty. Gen., for respondent.

STRAUP, J.

The defendant, before a jury, was convicted of the crime of incest, of having "sexual intercourse" with his daughter thirteen years of age, and appeals.

The alleged errors are on grounds of insufficiency of evidence to support the verdict, in that, as he contends, the prosecutrix was an accomplice, and that, to convict the defendant, required corroboration of her testimony, which, as he claims, was not shown; misdirection of the jury in particulars of the charge complained of; and the refusal of the court to charge as requested by him.

The defendant was the father of three children. His wife, when he married her, had a child, a son, by former marriage. She left the defendant when his youngest child was only about thirteen months old. His other children, including the prosecutrix, then also were small children. The children, including the stepson, remained with him. He cared for all of them as best he could. He was employed about all the time, working for a railroad company part of the time, part of the time at a smelter at Murray where he resided, and a number of years at a laundry near Murray. When his wife left him, he, for a time, had the children at an orphanage where he took care of them. Later and for a number of years he established a home where his children, including the stepson, lived with him, and employed different housekeepers to keep house for him.

His daughter testified that on October 8, 1928, on an occasion when the housekeeper was absent, the defendant, in the evening and when the family retired, sent the younger children to bed in a separate room and asked his daughter to occupy the bed with him in another room; that she consented to do so, or rather did as she was told, entered the room, disrobed, and got in bed; that the defendant also undressed, got in bed with her, lay up close to her, got on top of her and "tried to put his parts into mine and it hurt me so I cried, then he said I should stop crying or he would hurt me worse. I stopped crying and he kept on trying to put his parts into mine and hurt me"; that she remained with the defendant in bed all night; that the defendant "tried to do the same thing" before and after the occasion in question but how long after, she testified

she did not remember "except that it was not long after." The girl further testified that she had sexual intercourse with her half-brother, the defendant's stepson, and with another boy acquaintance, some of which relations were before and some after as she testified her relations were had with her father. No complaint was filed against the defendant until in September or October, 1929, about one year after the alleged offense was committed.

About two weeks before the complaint was filed, the prosecutrix was taken in custody by juvenile court officers. Up to that time she had made no complaint or any statement of any kind that her father had any wrongful relations whatever with her. After the complaint was filed, a physician in October, 1929, about a year after the alleged offense was committed, at the request of the juvenile court officers, made an examination of the girl and found her external genitals red and inflamed and the hymen torn vertically, showing a penetration caused by some external object which the physician testified could have resulted from intercourse or from other causes. He further testified that the inflamed condition of the genitals was the result of some recent penetration or manipulation, but just how recent he was unable to state.

In view of the testimony of the girl that she had sexual intercourse with others, the testimony of the physician does not corroborate her testimony that she had sexual relations with her father, nor does the testimony of the physician connect the defendant with the commission of the alleged offense. The testimony of the prosecutrix was in no particular corroborated by other evidence. The defendant was a witness in his own behalf and denied all sexual or attempted sexual relations with his daughter or any other wrongful relations with her, and denied that he slept with her or occupied the same bed with her. In some particulars and circumstances he was corroborated by the testimony of other witnesses. The jury evidently accepted the uncorroborated testimony of the girl as against the testi-

mony of the defendant and whatever corroborating circumstances were shown by him.

Hence, the first point urged is that a conviction could not lawfully be had on the uncorroborated testimony of the girl. This is put on the claimed ground that she was an accomplice, and, under the statute (section 8992, Comp. Laws Utah 1917), a conviction could not be had on the testimony of an accomplice unless corroborated by other evidence and as by the statute provided. Our rape statute (section 8105, Comp. Laws Utah 1917), which provides that rape is an act, among other acts, of sexual intercourse with a female under the age of thirteen years, and that any sexual penetration, however slight, is sufficient to complete the crime; our carnal knowledge statute (section 8109, Comp. Laws Utah 1917), that any person who shall carnally and unlawfully know any female over the age of thirteen years and under the age of eighteen years is guilty of a felony; and our incest statute (section 8089, Comp. Laws Utah, 1917), under which the defendant was prosecuted, that, if any person related to another person within and not including the fourth degree of consanguinity" "shall * * * have sexual intercourse with such other so related person, * * * shall be punished by imprisonment * * * for not less than three years and not more than fifteen years." In prosecutions under the rape and carnal knowledge statutes we have repeatedly held that the female is in law incapable of yielding consent and is not an accomplice, whether consent as a matter of fact was or was not yielded or given by her. *State* v. *Carter*, 52 Utah 305, 173 P. 459; *State* v. *Bayes*, 47 Utah 474, 155 P. 335; *State* v. *Hoben*, 36 Utah 186, 102 P. 1000. The same ruling was made where the defendant was convicted of adultery with a female fourteen years of age. *State* v. *Wade*, 66 Utah 267, 241 P. 838. The same ruling also was made in a case where the defendant was convicted of an attempt to commit incest with his daughter between eleven and twelve years of age. *State* v. *Winslow*, 30 Utah 403, 85 P.

433, 8 Ann. Cas. 908. These cases proceed on the theory that the female because of her age was in law incapable of yielding consent and thus was not an accomplice. In view of these holdings the prosecutrix was not an accomplice, and hence a conviction could lawfully be had on her uncorroborated testimony. The assignment of insufficiency of evidence is therefore overruled.

Exceptions were taken to the charge to the jury that "any penetration however slight is sufficient to complete the offense." It is contended that such a charge, though proper in case of rape because the statute as to such offense so declares, yet, is improper in a case of incest, and that to establish the crime of incest, it is necessary to show an emission of the male, or such copulation, or penetration of the body of the female, from which an emission may be inferred or presumed. In such connection it is argued that the language of the rape statute may not be transplanted into the incest statute, and that the court was not justified in doing so. In view of that, the defendant presented a request, which was refused and the refusal also assigned as error, that "the crime of incest is the act of carnal knowledge and in order that the crime be committed there must be a completion of copulation. Emission is an essential ingredient of the crime." To support his contention the defendant cites the case of *Harris v. State,* 72 Fla. 128, 72 So. 520, 521. The case furnishes little support to the contention. It was a prosecution for carnal intercourse with an unmarried female under the age of eighteen years. The court there approved the following charge:

"To constitute carnal intercourse there must have been actual contact of the male organ with the female organ, resulting in penetration of the female by the male organ to some extent, but not necessarily to the extent of puncturing the hymen. It is also unnecessary for the state to prove emission of seed."

The court disapproved the holding in the case of *Noble* v. *State,* 22 Ohio St. 541, that "emissio seminis is an essen-

tial ingredient in the crime of incest," and followed what theretofore was held by the Florida court in *Williams* v. *State*, 53 Fla. 84, 43 So. 431, contrary to that of the Ohio court. The undoubted weight of modern authority is that to show a completed sexual offense it is not essential to show an emission, whether the offense be rape, adultery, incest, or other carnal knowledge. In *Com.* v. *Hussey*, 157 Mass. 415, 32 N. E. 362, it was held that, as the essential features of carnal knowledge are the same in prosecutions for adultery as in prosecutions for rape, emission need not be proved. The terms "sexual intercourse" and "carnal knowledge" are analogous. To constitute the offense there of course must be an actual contact of the sexual organs and a penetration into the body of the female, the insertion of the male organ to some extent into the female organ. It need be no particular depth, and the hymen need not be broken. *Maxey* v. *State*, 66 Ark. 523, 52 S. W. 2; *People* v. *Courier*, 79 Mich. 366, 44 N. W. 571; Bishop, Statutory Crimes (3d Ed.) § 488. As to the extent of the penetration required, probably no better rule may be stated than was stated by Baron Parke in *Reg.* v. *Lines*, 1 Car. & K. 393, and referred to by Bishop. The charge of the court is in harmony therewith. We therefore think no error was committed in the charge or in refusing the defendant's request.

Witnesses who had known the defendant a long time on his behalf gave evidence with respect to his good character as a moral man and a law-abiding citizen. There was no character evidence to the contrary. With respect to the subject the defendant proposed the following request to charge:

"You are further instructed that good character is an important. fact with every man, and never more so than when he is put on trial, charged with an offense which is rendered improbable in the last, degree by a uniform course of life wholly inconsistent with any such crime. There as cases (and it is for you to say what weight it shall have in this case) where it becomes a man's sole dependence, and yet may prove sufficient to outweigh evidence of the most positive char--

acter. The most clear and convincing cases are sometimes satisfactorily rebutted by it, and a life of unblemished integrity becomes a complete shield of protection against what otherwise may appear to be proof of guilt. Good character may not only raise a doubt of guilt which would not otherwise exist, but it may bring conviction of innocence. In every criminal trial it is a fact which the defendant is at liberty to put in evidence, and, being in, the jury have a right to give it such weight as they think it entitled to."

The request was refused to which refusal the defendant excepted. The court on his own motion gave the following charge on the subject:

"No. 6: The defendant has introduced evidence of his previous *good character for honesty and integrity.* You are instructed that in determining the guilt or innocence of the defendant you are to consider all the evidence in the case, including the evidence of good character; and if upon consideration of all the evidence you entertain a reasonable doubt as to the defendant's guilt, or if evidence of his previous good character alone, when considered in connection with all the other evidence in the case, produces or creates a reasonable doubt in your minds of the guilt of the defendant, then you should give the defendant the benefit of such doubt and render a verdict of not guilty." (Italics added.)

To this charge the defendant took only a general exception, that "the defendant excepts to instruction No. 6 and the whole thereof."

These rulings are also assigned as error. In the case of *State* v. *Harris,* 58 Utah 331, 199 P. 145, 149, this court in a homicide case held it error to refuse, and approved the following request to charge on the subject of good character:

"Evidence has been given as to good character of the defendants Leland and Eugene Harris for peace and quietude. Such good character, when proven, is a circumstance to be considered by you in connection with all the other evidence in the case in determining the guilt or innocence of the said Leland and Eugene Harris, and is of value, not only in doubtful cases, but also when the testimony tends strongly to establish the guilt of the accused. When such character is proven it is a fact in the case, and should not be put aside by the jury in order to ascertain if the other facts and circumstances considered in themselves *do or do not* establish the guilt of the said Eugene and Leland Harris, but should be considered by you in con-

nection with all the other testimony in the case, and not independently thereof. When so considering it, you have the right to give such weight to it as you may think it entitled to, and it may be sufficient, if so regarded by you, in connection with all the other evidence in the case, to create a reasonable doubt in your minds as to the guilt of said Eugene and Leland Harris, though no such doubt might exist but for such good character."

Among other things, this court by unanimous opinion stated that "the request proposed complied with and is in harmony with the opinions" of the majority of the court "in *State* v. *Brown*, 39 Utah 140, 115 P. 994, Ann. Cas. 1913E, 1, and because we think the requested instruction *was right in everyway*, it is approved once more. In so holding we are in harmony with the prevailing view," and as stated in 8 R. C. L. 227 and 16 C. J. 982. (Italics added.) The propositions of the Brown Case approved by this court in the Harris Case have also been approved in the cases of *Egan* v. *United States*, 52 App. D. C. 384, 287 F. 958, and in *Jones* v. *United States*, 53 App. D. C. 138, 289 F. 536. The rule announced in the Harris Case has not been overruled, modified, or criticized by any subsequent decision of this court. Since the holding in the Harris Case, there should not be any difficulty in presenting requests or in giving instructions on the subject of good character. It of course is not essential that an instruction be given in the exact language as approved by this court in the Harris Case, but, when properly requested, it is essential that all of the material elements and propositions therein approved be embodied in an instruction. The reason for the rule, and as stated in the Brown and other cases there cited, in giving an instruction on the subject of good character, is that a jury of inexperienced laymen, without assistance from the court instructing them as to the purpose and effect of such evidence and the weight which they may give it, could hardly be expected to know the purpose and apply the rules applicable to that kind of evidence, and, if not so instructed, there is danger of incorrect inferences and

illogical conclusions which may be made by jurors from such evidence.

The request as presented is, as we think, too argumentative, and contained matters not within the propositions approved in the Harris Case. The instruction which the court gave, except as to the language, "good character for honesty and integrity," is, as far as it goes, not objectionable. The trait of character involved, however, was not that "for honesty and integrity," which rather implies a trait for truth and veracity, but involved a trait for morals, virtue, righteousness, and law-abiding. To properly call the court's attention that the wrong and not the right trait of character had been put to the jury required a more specific exception than the general exception to the whole charge, which, in other respects as far as the charge went, was not objectionable. It may be that the charge as given does not embrace all of the material elements and propositions stated and approved in the Harris Case and which ought to have been given had a proper request been presented, still, in the absence of a proper request and the charge being unobjectionable as far as it goes, the general exception taken is unavailing, without pointing out and calling the court's attention to what additional or further matter ought to have been given. A general exception such as here is of no avail unless the instruction excepted to is as a whole objectionable and erroneous. We have held that many times. The instruction excepted to is not of that character. We therefore are of the opinion that no error was committed in refusing the request, and, as no sufficient exception was taken to the charge, no error may be predicated with respect thereto.

The judgment of the court below is therefore affirmed.

ELIAS HANSEN, EPHRAIM HANSON, and FOLLAND, JJ., concur.

CHERRY, C. J., concurs in the judgment.