State of Nebraska, appellee, v. Danny Atkinson, appellant.

209 N. W. 2d 154

Filed July 6, 1973. No. 38883.

Edward E. Hannon, for appellant.

Clarence A. H. Meyer, Attorney General, and Calvin E. Robinson, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SPENCER, J.

This appeal is from defendant's conviction of having carnal knowledge of a female child under 15 years of age. He was sentenced to a term of 3 to 7 years in the Nebraska Penal and Correctional Complex. Defendant questions the sufficiency of the evidence, undue restriction of cross-examination, the exclusion of certain testimony, and the excessiveness of the sentence. We affirm.

The prosecutrix, who was in a special education section of the 8th grade, was 14 years and 5 months of age at the time of the alleged crime, May 12, 1972. She was riding with a Truman Rossman, who was 16 years of age, about 11:30 p.m., when their car was stopped by a car driven by Gary Seger and containing Danny Atkinson the defendant, Terry Stevens, and Gary Ogden as passengers. Defendant, who was 23 years of age, and Seger were both married.

Rossman got out of his automobile. Atkinson got into the Rossman car on the driver's side, and Seger got in on the right side, with prosecutrix between them. Rossman had taken out his keys. When he refused to give them to Atkinson, Seger, over her protest, pulled prosecutrix to his car. She got in on the driver's side. Seger got in after her on the same side. Defendant restrained Rossman while this was happening and then got into the Seger car on the other side of the prosecutrix. Ogden was in the back of the Seger automobile. Defendant told Stevens to get into the Rossman car, which he did. When

Seger drove off, Rossman and Stevens attempted to follow but lost sight of the car.

Prosecutrix testified she kept asking Seger if Rossman knew where they were going. The car went through a big mud puddle and stalled. When prosecutrix said she had to get home, she and Seger started walking back to town. Defendant and Ogden stayed with the car. Prosecutrix and Seger walked up the road about ½ mile. To this point the evidence is relatively undisputed.

We do not believe it necessary to recite the salacious and obscene details of the evidence incident to the alleged offenses. Suffice it to say that prosecutrix testified that Seger had sexual relations with her. When defendant and Ogden came up with the car, they also had relations with her. Later, in the car Ogden and the defendant again had intercourse with her. The defendant, Seger, and Ogden all admit being with the prosecutrix and corroborate most of her testimony except that they deny having intercourse with her.

The prosecutrix was examined by a physician at 3:30 a.m., May 13, 1972, within 3 hours of the alleged occurrences. He found a torn hymen, oozing drops of blood, which definitely established that she had been sexually molested and that this had occurred within a few hours of his examination. The doctor also found live sperm and a fresh injection of the gonorrhea germ.

The defendant's claim of insufficiency of the evidence goes to the issue of penetration. The prosecutrix testified to penetration on each occasion. On cross-examination she did get confused, but the evidence was sufficient to present a jury question. It is not necessary that the vagina be entered or that the hymen be ruptured; the entry of the vulva or labium is sufficient. As we said in State v. Chaney (1969), 184 Neb. 734, 171 N. W. 2d 787: "The slightest penetration of the sexual organ of the female is sufficient, if established beyond a reasonable doubt, to constitute the necessary element of penetration in a prosecution for rape, and such element

may be proved by either direct or circumstantial evidence."

It is only where there is a total failure of proof to establish a material allegation of the information, or the testimony is of so weak or doubtful a character that a conviction based thereon cannot be sustained, that the trial court is justified in directing a verdict for the defendant. Callies v. State (1953), 157 Neb. 640, 61 N. W. 2d 370.

This is a second trial of this defendant. He was convicted on a prior occasion but was granted a new trial. His theory of defense is summed up in the following statement from his brief: "Furthermore proof of sperm in her vagina and the tear in the hymen does not rule out the defense position that she probably had intercourse earlier in the evening while running around Atkinson with a group of boys."

We said in State v. Chaney, *supra:* " 'This court has always recognized the age-old admonition of Sir Mathew Hale that "It is true rape is a most detestable crime, and therefore ought severly and impartially to be punished * * * but it must be remembered, that it is an accusation easily to be made and hard to be proved, and harder to be defended by the party accused, tho never so innocent," and that courts should "be the more cautious upon trials of offenses of this nature." In the light thereof, courts have generally exercised great care and vigilance to insure that a verdict of conviction was supported by sufficient competent evidence and not the result of passion and prejudice, inspired by the wiles of a malicious contriver or the very heinousness of the offense charged. * * *.' " Two juries have found the defendant guilty. We do not believe a jury would consider a 14-year-old, who was in an 8th grade special education class, to be a malicious contriver. On the record we see no reason to question their judgment.

Defendant next complains that there is insufficient corroboration of the testimony of the prosecutrix. While

the testimony of the prosecutrix does have some contradictions, they can easily be explained, and the opportunity for the commission of the offense is unquestioned. Further, corroboration is found, as in State v. Hunt (1965), 178 Neb. 783, 135 N. W. 2d 475, in the fact that she told her mother what had happened at the earliest opportunity. The fact that she failed to confide in her uncle or grandfather when they found her does not in any way weaken the corroboration. The fact that she confided in her mother at the first opportunity, coupled with the testimony of the State's medical expert, the admission of defendant's group that they took prosecutrix from Rossman, and the testimony of Rossman that his opposition to Kathy being taken resulted in his being restrained by the defendant, provide circumstantial evidence of the most cogent character for corroboration within the controlling authorities.

Defendant complains of the restriction on the cross-examination of prosecutrix' uncle who found her at home 5 minutes after she arrived. In response to his question, she told him that she had been walking around the town of Atkinson with the Hagan girls and that the Hagan boys had brought her home. This testimony was within the limits of permissible cross-examination, but its exclusion herein was harmless error. Defendant admits that he was with the prosecutrix at the times testified to by her. It is obvious that she was trying to hide her plight from her uncle. When he accused her, however, of being with the defendant she admitted it to him.

Defendant also complains of several instances wherein the trial court restricted his cross-examination of the prosecutrix. The defendant offered exhibit 2 at the trial. This is a statement written by the prosecutrix shortly after the alleged offense. In that statement the witness stated that she was "raped." Defendant's counsel asked her what she thought the word "rape" meant. An objection was sustained. The word was not used by her at the trial. Exhibit 2 was offered by the de-

fense, undoubtedly for impeachment purposes. However, exhibit 2 substantially corroborates prosecutrix' testimony at the trial. While the objection should have been overruled, we do not consider the ruling prejudicial to the defendant.

We said in Texter v. State (1960), 170 Neb. 426, 102 N. W. 2d 655: " 'Error may creep into the proceedings in criminal prosecutions in spite of impartiality, care, learning and vigilance of the trial judge. It is only error prejudicial to a right of accused or the denial of a substantial legal right that requires the reversal of his conviction. Harmless error does not require a second trial. The law recognizes the possibility of harmless imperfections in the proceedings of judicial tribunals and does not defeat itself by exacting absolute perfection in bringing malefactors to justice.' "

Prosecutrix had been generally in Rossman's automobile after about 8:30 on the evening in question. During most of this time other boys and her sister were also in the automobile. About 11:30 p.m., Rossman and prosecutrix left the others to drive to the country. They were followed by the defendant and his group. The Rossman car was stopped and prosecutrix was taken to the other vehicle. Shortly thereafter the subject offense was committed. Defendant attempted through cross-examination of Rossman and prosecutrix to discover the activities in the Rossman vehicle prior to prosecutrix leaving that vehicle. Defendant was not permitted to ask Rossman whether any "hanky-pank" had gone on in the Rossman vehicle. The word "hanky-pank" is filled with innuendo imprecise in common meaning. The trial court properly sustained an objection to the question. If the defendant wished to know whether the prosecutrix had been kissed, fondled, or carnally contacted while in the Rossman vehicle, appropriate questions should have been but were not asked. We have reviewed the other assignments of restriction of cross-examination

and find them to be either frivolous, fully covered by other evidence, or nonprejudicial.

Defendant argues that he was prejudiced by the exclusion of certain medical testimony concerning gonorrhea. The prosecutrix' doctor testified when he examined her shortly after the offense her vagina had a fresh infestation of gonorrhea germs. Defendant's doctor was not allowed to state his opinion for the jury that Gary Seger and Gary Ogden were free from venereal disease when examined by him. Both Seger and Ogden would testify that they did not receive any medical treatment between May 12, 1972, and the date of the medical examinations. Defendant also attempted to introduce evidence that Gary Seger's wife and his own wife did not have venereal disease when their tests were made.

Defendant's medical witness took specimens from Sharon Atkinson, Gary Ogden, and Sharon Seger. They were processed by his office staff and then sent to a laboratory at Norfolk, Nebraska. He attempted to testify from the report he received from the laboratory. The objection to the testimony was sustained on the basis of insufficient foundation. The doctor's opinion was based not on his own examination but upon the report of someone who analyzed the samples taken by him. No one connected with the analyses was called as a witness.

Defendant relies on Houghton v. Houghton (1965), 179 Neb. 275, 137 N. W. 2d 861, for the proposition that the opinion evidence should have been admitted. However, in Houghton the testimony indicated that the persons who made the tests were working under the personal direction of the doctor. In the present case, the analyses on which the opinon evidence was based had been prepared by a wholly independent laboratory with which the testifying physician had no connection. There was no testimony as to the testing methods used or the

qualifications or competency of the persons who actually made the tests.

Evidence was admitted to show that the defendant was examined for gonorrhea on June 3, 1972, and none was found at that time. As above noted, evidence was excluded as to whether or not his companions were free of a gonorrhea infection. Seger was examined May 31, 1972, and Ogden July 8, 1972. The offense occurred May 12, 1972. This evidence was offered in an attempt to prove that an unknown fourth male, who was suffering from gonorrhea, had intercourse with prosecutrix that evening, thus explaining the sperm in her vagina and weakening the corroboration.

Defendant's doctor testified: "Medicine used to feel that 100% of men who had gonorrhea were symptomatic of the gonorrhea. It has only been in recent years that we now recognize the fact that some 15% of men are asymptomatic of gonorrhea. That is, they have the active disease, but have no symptoms from this disease."

Defendant's doctor also testified that the fact that the defendant did not have gonorrhea at the time he tested him does not prove that he did not have sexual intercourse with somebody who had it.

While it would have been within the limits of the trial judge's discretion to have permitted the introduction of the evidence, we do not find that he abused his discretion on the present record by its exclusion.

This is a prosecution for statutory rape. We are not here concerned with previous chastity. Callies v. State (1953), 157 Neb. 640, 61 N. W. 2d 370. Even if the prosecutrix had had sexual relations earlier in the evening, this would not absolve the defendant, nor would the proffered testimony establish that defendant's companions could not have had intercourse with the prosecutrix. They could have done so even if the gonococcus germ had been deposited by a fourth person earlier in the evening. We find no error in the exclusion of the testimony.

The evidence that defendant did not have gonorrhea when tested on June 3, 1972, was before the jury. It is apparent that the jurors did not believe this absolved the defendant. It does test credulity to believe that defendant and his associates forcibly took the prosecutrix from her 16-year-old companion and spent more than 2 hours only riding around with her.

Defendant's final assignment of error is the excessiveness of the sentence. The subject offense, having carnal knowledge of a female under 15 years of age, is a serious one. The statutory penalty is 3 to 50 years. On the record before us, we cannot say that the trial court abused its discretion. As we said in State v. Jones (1972), 187 Neb. 669, 193 N. W. 2d 562: "Where punishment of a statutory offense is left to the discretion of the court, a sentence imposed within the statutory limits will not be disturbed unless an abuse of discretion appears."

The judgment of the district court is affirmed.

AFFIRMED.