**STATE of North Dakota, Plaintiff/Appellee,**

v.

**Rodney KIRK, Defendant/Appellant.**

**Cr. No. 440.**

Supreme Court of North Dakota.

Oct. 24, 1973.

———◇———

Ella Van Berkom, Minot, for defendant/appellant.

Richard B. Thomas, State's Atty., Minot, for plaintiff/appellee.

TEIGEN, Judge.

The defendant was convicted of the crime of rape in the second degree. He has appealed to this court, alleging insufficiency of the evidence to sustain the jury's verdict.

The defendant was eighteen years of age and the complainant sixteen years of age when the alleged offense occurred. The information charges that the defendant had an act of sexual intercourse with the complainant by overcoming her resistance by force or violence, in violation of Section 12–30–06, N.D.C.C. The defendant admits that the complainant was not his wife, that he was eighteen years of age at the time alleged in the information, and that the complainant was sixteen years of age.

He contends, on this appeal, that the evidence is insufficient to establish penetration; that if penetration is established the evidence is insufficient to identify the defendant as the perpetrator of the act.

The incident occurred in a remote, hidden coulee several miles west of Minot, North Dakota, where a "beer bust" was in progress, attended by about fifty young persons, more or less, ranging in age from about fifteen to nineteen years. The beer bust was held on September 16, 1972, in the open. It commenced at about 7:30 p. m., and lasted until nearly midnight. The defendant was present as a co-host. The complainant, accompanied by her girlfriend and her girlfriend's boyfriend, arrived there at about nine o'clock. It appears that the young people were milling around a bonfire, visiting and drinking beer. The beer was being supplied from two sixteen-gallon kegs. It appears that most of those in attendance were males. Apparently there were only two or three girls present.

At about 10:30 p. m., at a distance approximately twenty-five to thirty-five feet away from the bonfire, the complainant was forcibly thrown upon the ground and while she was held by several persons her jeans and panties were removed; that although she struggled and resisted, her resistance was overcome by those who held her arms and legs and covered her eyes and mouth with their hands. The complainant testified that during the course of these events two persons she did not see and could not identify had intercourse with her. There were probably ten to twenty persons standing around her watching. Several testified at the trial. It was a

dark night, the only light being from the bonfire and from the lights of an automobile which were turned on for a short time. When the event was over, the audience left. The complainant was crying and two persons came to assist her. They found her clothing, except for one shoe. After she dressed, one of them took her back to Minot. He spent some time calming her down, because she was crying and distraught, before he returned her to her home.

The following morning the complainant was examined by a doctor who testified that he found bruises and a small tear on the hymenal ring. He testified that it could have been torn by forcing upon it something larger than the opening of the hymenal area, thus stretching the hymenal ring and causing it to tear. He also testified that the vagina would accept a larger object than the hymenal ring itself and that, therefore, there would probably be no damage to the vagina, but he was of the opinion that there had not been two complete acts of sexual intercourse because the damage to the hymen would then have been greater. Also, he found no male semen present in the vagina. The doctor explained that the female genital organs consist of the labia, or outer lips, the hymenal ring, and the vagina, in that order. He was also permitted to testify that the medical definition of penetration, as it relates to sexual intercourse, is the insertion of the penis into the vaginal canal, or vagina; that, therefore, until the penis goes through the hymenal ring there is no penetration. On this basis defendant argues that there was no penetration and, therefore, no rape.

Our statute provides:

"The essential guilt of rape consists in the outrage to the person and feelings of the female. Any sexual penetration, however slight, is sufficient to complete the crime." Section 12–30–03, N.D.C.C.

In State v. Oliver, 78 N.D. 398, 49 N. W.2d 564 (1951), this court, in applying the above statute, held that there was ample proof of penetration of the female organs of a six-year-old child, based on the testimony of the examining doctor who testified that he found a red spot which indicated trauma on the inside of the labia majora from which he took a smear of the material deposited on the labium.

In State v. Werner, 16 N.D. 83, 112 N. W. 60 (1907), in which an eight-year-old child was the victim of rape, this court held that the evidence was sufficient to justify a verdict of guilty even though there could not have been complete penetration because the child's genitals were not lacerated. We held that the evidence was sufficient to warrant a finding that there was at least slight penetration, which, under the law, was all that was essential to constitute this element of the offense of rape.

In 65 Am.Jur.2d, Rape, Section 3, it is stated:

"The actual penetration of the female sex organ by the male sex organ is required as an element of rape, according to all the authorities and this penetration constitutes carnal knowledge, which is synonymous with sexual intercourse. Emission without penetration is not sufficient, and proof of emission is not an essential element of the crime of rape.

"A number of cases hold that although some penetration must be shown beyond a reasonable doubt, it need not be full penetration; the slightest penetration is sufficient. While the private parts of the male must have entered at least to some extent in those of the female, the offense is committed if the male organ enters the labia of the female organ. Rupture of the hymen is not necessary, nor is it necessary to show that there was a laceration of the vagina, which usually results from a first-time copulation, especially with young girls."

For these reasons, if we completely discount the testimony of the complainant that there was penetration and consider the

testimony of the doctor who examined her the following morning, his testimony establishes beyond a reasonable doubt proof of penetration beyond the labia to the point, at least, where there occurred a bruising and tearing of the hymen. This evidence satisfies the requirement of the statute that there was "sexual penetration, however slight" and is, therefore, sufficient to establish this element of the crime charged.

We also find that there is sufficient and substantial evidence to identify the defendant as one of two who had carnal knowledge with this complainant at the time and place in question.

A nineteen-year-old male testified that he saw the defendant lying on top of the complainant while she was lying on her back on the ground with nothing on from the waist down; that the defendant's legs were extended back between the legs of the complainant and, while this witness was holding one of her legs, he saw the defendant's body moving up and down. He testified that a few minutes later the defendant "slid off and then Jim Cook got on." Later, when the complainant was released and got up, she was crying. He testified that he tried to calm her down and offered her a ride home.

A seventeen-year-old male testified that he was present at the time and that he saw a male person, wearing green pants, on top of the complainant. He also testified that he had seen the defendant earlier and he was wearing green pants that night.

A sixteen-year-old male testified that he saw the defendant down in front of the complainant as she lay on the ground stripped from the waist down; that the defendant's pants were halfway down; that the complainant was screaming while she was being held down; that several persons were holding her arms and legs.

In addition, several witnesses testified that there were a considerable number of people surrounding the scene while this episode was occurring. It was explained that they formed a ring around those on the ground. The number was judged as being anywhere from ten to twenty.

The complainant did not identify the defendant because, as she explained, it was dark, she was crying and extremely distraught at the time, and, for a greater portion of the time during which the event occurred, her eyes were covered. She testified that she was forcibly and against her will held in position by several persons as she lay on the ground on her back with her legs held apart.

In view of this and other evidence in the case, this court does not feel that it can substitute its opinion for the verdict of the jury as the jury could reasonably have found, as it did from the evidence adduced, that the defendant did commit the act charged. State v. Champagne, 198 N.W.2d 218, (N.D.1972).

For these reasons we affirm the judgment.

ERIKSTAD, C. J., and VOGEL, KNUDSON and PAULSON, JJ., concur.