STATE of Utah, Plaintiff and Appellee,

v.

Gene SIMMONS, Defendant and Appellant.

No. 860053.

Supreme Court of Utah.

July 5, 1988.

Joan Watt, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Sandra L. Sjogren, Salt Lake City, for plaintiff and appellee.

ZIMMERMAN, Justice:

Defendant Gene Simmons appeals from convictions on one count of rape of a child and two counts of sodomy upon a child. Defendant was sentenced to three concurrent minimum mandatory terms of ten years to life. The two sodomy convictions are affirmed. However, the rape conviction is reversed.

Defendant lived with V. and her three children, A., a girl, and T. and G., boys, from approximately January of 1982 until May of 1985, when allegations of sexual abuse were made against him. He was later charged by information with raping A. "on or about May 5, 1985" and with sodomizing T. and G. On appeal, defendant attacks all convictions. We consider first the rape conviction.

Simmons contends that the evidence was insufficient to sustain the conviction because there was no showing of penetration, as required by Utah Code Ann.

§ 76–5–407(2) (Supp.1985). That section provides in pertinent part:

(2) In any prosecution for unlawful sexual intercourse, rape, or sodomy, any sexual penetration ... however slight, is sufficient to constitute the offense.

■ The first question is the definition of "penetration." If that term requires entry into the vaginal canal of the victim, there is no question that the evidence here is insufficient. This Court has never expressly addressed the question of whether "penetration" requires proof that the penis of the defendant or, in the case of object rape, the object being used to commit the rape, entered the vaginal canal of the victim or whether it is sufficient if it is merely inserted between the outer folds of the victim's labia. However, the generally accepted rule is that entry between the outer folds of the labia is sufficient to constitute "penetration" as that term is commonly used in defining the crime of rape. *See* 65 Am.Jur.2d *Rape* § 3 (1972). Our prior decisions are entirely consistent with this proposition. *See State v. Warner*, 79 Utah 500, 505–06, 291 P. 307, 309 (1930), *vacated on other grounds*, 79 Utah 510, 13 P.2d 317 (1932) (citing *Reg. v. Lines*, 1 Car. & K. 393 (O.S.C.1844)). We therefore declare it to be the definition of penetration under section 76–5–407.

■ In light of the foregoing, the question here is whether there was evidence sufficient to support the jury's finding beyond a reasonable doubt that defendant's penis was between the folds of A.'s labia during the incident on or about May 5, 1985, which is charged in the information. We conclude that there was not sufficient evidence. A. testified that defendant put the tip of his penis "on" her labia. At no time did she testify that defendant put his penis between the outer folds of her labia, much less in her vagina. There was no evidence of penetration on or about May 5, 1985, beyond the testimony of the victim.[1]

■ The jury's implicit and necessary finding that penetration occurred despite the lack of adequate evidence may be explained. During trial, the jury heard evidence of a series of incidents between defendant and A. stretching over a period of almost three years. During some of those incidents, defendant did place his penis between A.'s outer labial folds. On at least one occasion, his penis penetrated the vaginal canal. On others, he apparently only touched his penis to the outside of the folds. However, the trial judge admitted this evidence of prior crimes for the limited purpose of showing intent, opportunity, or plan with respect to the May 5th incident. *See* Utah R.Evid. 404(b). In addition, the court instructed the jury that to find defendant guilty of rape, it had to find that he had sexual intercourse with A. "on or about the 5th day of May, 1985." No objection was received as to this instruction. In light of the limited purpose for which the evidence was admitted, the narrow specificity of the charge in the information, and the similar specificity in the jury instructions, the jury could not properly have taken into account the ample evidence of other incidents of rape committed upon the same victim in determining whether penetration had occurred on May 5, 1985.[2]

1. The Chief Justice in dissent reads the record differently. He relies principally on the inconsistent and confusing description given by the prosecutor of what A. was demonstrating to the jury on an anatomically correct doll. However, we conclude that a fair reading of the testimony regarding the anatomical doll leads only to the conclusion that the victim was demonstrating that defendant had placed his penis *on* her labial folds.

2. It is worth noting that in *State v. Fulton*, 742 P.2d 1208 (Utah 1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 777, 98 L.Ed.2d 864 (1988), we made it clear that the precise date of the offense need not be charged and proven as an element of every crime. It is enough that the defendant is "sufficiently apprised of the particulars of the charge to be able to 'adequately prepare his defense.'" *Id.* at 1214 (quoting *State v. Burnett*, 712 P.2d 260, 262 (Utah 1985)). Had defendant been put on notice that he was being tried for all of the instances of rape to which the victim and other witnesses testified, the lack of proof of a precise date for each incident would not necessarily have been fatal to the State's case. *Id.* at 1213. However, here the State chose to proceed on a very narrow charge. This decision was its undoing.

For the foregoing reasons, we reverse the conviction of rape.[3]

Defendant also challenges his conviction on two counts of sodomy upon the two boys. No purpose would be served by setting defendant's arguments out here at length. We have considered them in detail and find that no harmful error occurred.

The conviction of rape is reversed. The two sodomy convictions are affirmed, as are the two minimum mandatory ten-year sentences on those charges.

HOWE, Associate Chief Justice: (concurring).

I concur in Justice Zimmerman's opinion and also in all but part VI of the opinion of Chief Justice Hall.

STEWART, Justice: (concurring).

I concur with Justice Zimmerman's opinion in affirming the two sodomy convictions and reversing the rape conviction and also with Chief Justice Hall's opinion in affirming the two sodomy convictions.

With respect to the rape charge, I submit that this is a case in which the trial court clearly should have given a lesser included offense instruction on the crime of child sexual abuse. Such an instruction was requested at trial and improperly refused by the trial court. Had the instruction been given, the problem that divides the Court today might well have not arisen since the jury could have convicted on a crime that clearly fit the facts set out in Chief Justice Hall's opinion. In my view, the law clearly required giving the instruction, most especially since it was based on defendant's theory of the case and the defendant therefore had a right to have it presented to the jury. *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). Due process requires that a lesser included offense instruction be given when the evidence warrants such an instruction. *State*

v. *Baker*, 671 P.2d 152 (Utah 1983); *Hopper v. Evans*, 456 U.S. 605, 611, 102 S.Ct. 2049, 2052–2053, 72 L.Ed.2d 367 (1982). Beyond question, the evidence would have supported a conviction for child sexual abuse.

HALL, Chief Justice: (concurring and dissenting).

For the reasons enumerated below, I concur in affirming defendant's sodomy convictions and dissent as to the reversal of defendant's conviction for rape of a child. Further, inasmuch as defendant raises constitutional claims and issues of first impression, it is important to also address the efficacy of such points on appeal.

I

■ Under count three, defendant was convicted of sodomizing G. In this regard, G. testified at trial that when he was eleven years old, defendant initiated sexual contact with him. Apparently, on several occasions, defendant told G. to play a "trick" on his brother, T. When T. came into the room, G. was to place his mouth over defendant's penis. Sometimes G. would simply place his mouth over the penis, while other times, his mouth touched defendant's penis.

On appeal, defendant argues that the evidence was insufficient to sustain his conviction of sodomy upon a child as to G. Specifically, defendant claims that since he only intended to simulate the act of fellatio with G., any touching that occurred was merely "accidental." In short, defendant urges this Court to believe that he "could not have been aware that his conduct was reasonably certain to cause the touching." Such contention is wholly without merit.

Utah Code Ann. § 76–5–403.1 (Supp. 1987) provides in part:

(1) A person commits sodomy upon a child if the actor engages in *any sexual*

---

**3.** The likelihood of jury confusion was enhanced by the prosecutor's closing argument in which she repeatedly focused on the evidence of prior incidents of molestation, rather than on what occurred on May 5th. This argument clearly strayed from the charge in the informa-

tion and from the jury instructions, both of which required a finding of penetration on or about May 5th.

In short, the case presented to the jury was built upon evidence of prior crimes that Simmons was never charged with committing.

*act* upon or with a child who is under the age of 14, *involving* the genitals of the actor or the child and the mouth or anus of either person....

(Emphasis added.)

Since *no mens rea* is explicitly stated for this crime, Utah Code Ann. § 76–2–102 (Supp.1987) would normally apply. That section provides in part:

> [W]hen the definition of the offense does not specify a culpable mental state and the offense does not involve strict liability, intent, knowledge, or recklessness shall suffice to establish criminal responsibility.

Utah Code Ann. § 76–2–103 (1978) states that a person engages in conduct:

> (2) Knowingly, or with knowledge, with respect to his conduct or to circumstances surrounding his conduct when he is *aware of the nature of his conduct or the existing circumstances.* A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that *his conduct is reasonably certain to cause the result.*

(Emphasis added.) In response to questioning concerning the contact that occurred, G. testified at trial:

Q: [By the prosecutor] What occurred in that room? Can you speak slowly?
A: At first, it was just that I backed off when my brother walked in and then it was just barely the tip of my mouth. I mean, *his penis in my mouth* and later on it became the whole thing, but I wasn't really actually sucking.

. . . .

Q: Now, was there any contact from your mouth to his penis?
A: Yes, my lips touched.
Q: And how many times did that happen?

A: *Four.*

. . . .

Q: So, when [defendant] would call [your brother], is that when he—is that when he came in?
A: Yeah.
Q: And how many times did this happen?
A: [Defendant's] calling him in?
Q: Uh-huh.
A: *About ten.*

(Emphasis added.) Due to the numerous occurrences involved and in view of defendant's conduct and the circumstances surrounding the same, the jury could determine beyond a reasonable doubt that defendant not only engaged in sexual activity involving his genitals and the mouth of his victim, but that he was also aware of the nature of his conduct, the existing circumstances, and that his conduct was reasonably certain to cause the result. Therefore, defendant's conviction on this count is appropriately affirmed.[1]

## II

 Under count two, defendant was convicted of sodomizing T. On appeal, defendant argues that the trial court violated his right of confrontation by not allowing him to present evidence regarding T.'s prior sexual experiences.[2] Specifically, it was defendant's contention at trial that such testimony would have provided an alternative explanation of the victim's knowledge of certain sexual acts and diminished the victim's credibility by suggesting that he could have fabricated the charges against defendant.

Recently, this Court addressed this issue in *State v. Moton* [3] and concluded that the defendant was not prejudiced by the exclusion of further cross-examination.[4] Likewise in this case, although the trial court

---

1. *See State v. Gehring,* 694 P.2d 599, 600 (Utah 1984); *State v. McCardell,* 652 P.2d 942, 945 (Utah 1982).

2. Although in his brief defendant states that the trial court refused evidence regarding prior sexual experience of the children generally, the record indicates that defendant actually attempted to present evidence regarding T.'s prior conduct.

3. 749 P.2d 639 (Utah 1988).

4. *Id.* at 644; *id.* at 644 (Zimmerman, J., concurring) (sufficient evidence regarding the victim's sexual activities was admitted so as to make the court's error harmless under the federal constitutional standard).

did not permit all of the questions defendant wished to ask T., the court did allow argument and testimony relevant to the victim's credibility, sexual knowledge, and possible motives for lying. Indeed, after the court ruled as to the issue at hand, defense counsel nevertheless elicited from the victim that his friends taught him the meaning of sexual phrases defendant had used. Moreover, the victim had already testified as to the lack of prior sexual activity with his sister. Finally, while other testimony at trial discussed the sexual knowledge the victims obtained from the family's babysitter, defense counsel chose not to pursue this information as to T. upon cross-examination. The evidence sought by further cross-examination having thus been already brought out either directly or by implication from T. or from the testimony of other witnesses, defendant was not prejudiced by the exclusion of further cross-examination.[5]

## III

■ Defendant also claims on appeal that he was denied his right to trial by a jury chosen from a fair cross-section of the community. A review of the record reveals that on the first day of trial, defendant asked for and was denied a hearing on his motion to quash the jury panel and challenge the jury selection act. Defendant, however, was allowed to present extensive argument on this issue, including specific and detailed facts to support his contention. Defendant was also permitted to present ample proffer as to other evidence supporting his claims. Yet, even if we accept defendant's contentions raised upon argument and proffer, we have previously addressed this issue in *State v. Tillman,*[6] *and our decision therein is dispositive here.*

5. Prejudice does not arise from the exclusion of evidence where information that may be brought out by further questioning was already before the jury from the testimony of others or by implication from the witness's own testimony. *See State v. Rammel,* 721 P.2d 498, 500 (Utah 1986), and cases cited therein.

6. 750 P.2d 546, 573–77 (Utah 1987); *see also id.* at 574 n. 115 ("Constitutional challenges to pan-

## IV

■ Defendant further claims that the minimum mandatory system under which he was sentenced was unconstitutionally vague. This argument was previously addressed in *State v. Egbert*[7] and *State v. Gerrish.*[8] Application of the principles in those cases supports the holding that the statute under which defendant was sentenced is not unconstitutionally vague.

## V

■ Defendant likewise contends on appeal that he should have been regarded as a stepfather to the victims for purposes of probation consideration at time of sentencing. Utah Code Ann. § 76–5–406.5 (Supp. 1984) (amended 1986) provides in part:

(1) In a case involving rape of a child, attempted rape of a child, sodomy upon a child ... where the defendant is the victim's father, stepfather, or adoptive father or a male who is the child's legal guardian who has been living in the household in the role of a father to the victim for a continuous period of time of at least one year prior to the earliest offense, ... execution of sentence may be suspended and probation may be considered only if all of the following circumstances are found by the court to be present and the court in its discretion, considering the circumstances of the offense, including the nature, frequency, and duration of the conduct[,] finds probation or suspension of sentence to be proper....

. . . .

(3) The defendant has the burden to establish by a preponderance of evidence eligibility under all of the criteria of this section.

els should be brought outside the framework of the Act."); *State v. Bishop,* 753 P.2d 439, 457 (Utah 1988).

7. 748 P.2d 558, 559–60 (Utah 1987).

8. 746 P.2d 762, 762 (Utah 1987); *see also State v. Larson,* 758 P.2d 901 (Utah 1988).

Even though defendant was not married to the victims' mother, he contends that because he lived with the children in a "parent/child relationship" for a continuous period of over three years, he should have been given the opportunity at the time of sentencing to establish that he met the criteria for probation under the above statute.

Regardless of the "role" defendant claims he assumed after moving in with the victims and their mother, the language of the statute is clear and defendant has not shown that he met the requirements thereunder.[9] Therefore, the trial court did not err in refusing to consider defendant for probation under the statute.

## VI

Finally, I do not join the Court in reversing defendant's conviction for rape of a child. Our standard of review in this case is narrow and clear:

> [W]e review the evidence and *all inferences which may reasonably be drawn from it* in the light most favorable to the verdict of the jury. We reverse a jury conviction for insufficient evidence only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted.[10]

In reiterating this standard, we have stated:

> In reviewing the conviction, we do not substitute our judgment for that of the jury. "It is the exclusive function of the jury to weigh the evidence and to determine the credibility of the witnesses...." So long as there is *some evi-*

dence, *including reasonable inferences,* from which findings of all the requisite elements of the crime can *reasonably be made,* our inquiry stops.[11]

Regarding such, defendant claims and the majority concludes that there was no evidence upon which a reasonable jury could find the element of penetration. I disagree.

Utah Code Ann. § 76–5–407 (Supp.1987) provides in pertinent part:

> (2) In any prosecution for unlawful sexual intercourse, rape, or sodomy, *any sexual penetration* or, in the case of sodomy, any touching, *however slight,* is sufficient to constitute the offense.

(Emphasis added.) As early as 1930, this Court adopted a definition of sexual penetration for purposes of the crime of rape. In *State v. Warner,*[12] we approved a jury instruction that "any penetration however slight is sufficient to complete the offense" of rape. In doing so, we adopted the rule stated by the English court in *Regina v. Joseph Lines.*[13] Therein, the court held that the appropriate rule of law only required the jury to determine "whether, at any time, any part of the virile member of the [defendant] was within the labia of the pudendum of the prosecutrix; for if ever it was, (no matter how little), that will be sufficient to constitute a penetration."[14] In accepting this standard, the *Warner* Court noted:

> To constitute the offense there of course must be an actual contact of the sexual organs and a penetration into the body of the female, [that is] the insertion of the male organ to some extent into the female organ. It need be no particular

---

**9.** *See Larson,* 758 P.2d at 904.

**10.** *State v. Petree,* 659 P.2d 443, 444 (Utah 1983) (emphasis added; citations omitted); *see also State v. Cantu,* 750 P.2d 591, 593 (Utah 1988).

**11.** *State v. Booker,* 709 P.2d 342, 345 (Utah 1985) (emphasis added; citations omitted). "Inference" has been defined in part as "the act of passing from one judgment to another, or from a belief or cognition to a judgment"; "a conclusion; a deduction." Similarly, "infer" has been defined in part as "to accept or derive as a conse-

quence, conclusion, or probability"; "to surmise; guess." Webster's New International Dictionary (2d ed. unabridged 1934).

**12.** 79 Utah 500, 291 P. 307 (Utah 1930), *vacated on other grounds,* 79 Utah 510, 515, 13 P.2d 317, 320 (1932).

**13.** 79 Utah at 506, 291 P. at 309 (citing 1 Car. & K. 393 (O.S.C.1844)).

**14.** 1 Car. & K. at 393.

depth, and the hymen need not be broken.[15]

This standard has been interpreted and is in keeping with the rule that even the slightest penile "penetration" of the labia is sufficient to constitute the offense of rape although the vagina was not entered and an act of intercourse was never completed.[16] The issue then is whether the jury could have reasonably concluded from the evidence and *the reasonable inferences* which may be drawn therefrom that defendant's penis "penetrated" A.'s sexual organ even *slightly*.[17] The record clearly supports such a finding.

Indeed, in describing the circumstances surrounding the offense on the specific date charged, A. testified:

"Q [By the prosecutor] What happened as you were watching cartoons?

"A [Defendant] called me into his room.

"Q What happened when you got into his room?

"A He told me to come in the room. Then he told me to take off my—(Girl crying)

. . . .

"Q . . . So, you went into the bedroom and he told you to do something. What did he tell you to do?

"A To take off my clothes.

"Q What did you say?

"A No.

"Q What happened next?

"A (No response.)

"Q Did he do anything?

"A Yes, he took off my pants and then he took off his pants.

"Q What happened next? What happened next?

"A Then he put me on his bed and then he got on me and put the tip of his private on my private.

"Q Can you take a deep breath?

"A (Girl crying)

"Q I don't know if people can understand quite what you are saying. Can you repeat what you just said?

"A He put his private on my *private*.

"Q [A.], do you have another word that you use when you refer to [defendant's] private?

"A Penis.

"Q Do you have another word that you use when you refer to your private?

"A *Vagina*.

"Q What happened at that time? Can you describe what [defendant] did?

"A *He was moving around*. He was breathing hard.

"Q He did what?

"A (No response.)

. . . .

"Q . . . Can you show with this doll, assuming this is [defendant], how he was in relation to you.

"A (Girl places male doll on top of female doll.)

. . . .

"Q . . . You want to show on your lap, show with this doll what happened?

"A (Girl demonstrated.)

"Q Okay. Were [defendant's] clothes off or on?

"A Off.

"A [A.], what part of his body touched yours?

"A What do you mean?

"Q Can you describe for the jury where his private was touching you?

---

**15.** 79 Utah at 506, 291 P. at 309 (citations omitted). The jury in this case was given an instruction in accordance with this standard.

**16.** *See, e.g., Sherbert v. State,* 531 S.W.2d 636, 637 (Tex.Crim.App.1976); *Rhodes v. State,* 462 P.2d 722, 726 (Wyo.1969); *see also Rhoades v. State,* 504 S.W.2d 291 (Mo.App.1973); *State v.*

*Atkinson,* 190 Neb. 473, 209 N.W.2d 154 (1973); *State v. Murry,* 277 N.C. 197, 176 S.E.2d 738 (1970); *State v. Kirk,* 211 N.W.2d 757 (N.D. 1973). "Slight" has been defined in part as "superficial." Websters', *supra* note 11.

**17.** *See Gehring,* 694 P.2d at 600.

"A Show?

"Q Uh-huh. Why don't you take the dolls' clothes off since that is how it occurred.

"[The prosecutor]: In the interest of time, I will take this doll's clothes off. Let the record reflect these are anatomically correct dolls.

"[Defense counsel]: Sure.

"Q [By the prosecutor] Now, show how [defendant] was with this doll?

"A (Girl places male on top of female doll.)

"Q [A.], can you show this jury, without this doll being on top, can you point with your finger where his private touched you?

"A (Girl pointing.)

"[Defense counsel]: May the record reflect that the finger appears to be between the legs, on the closest to the front side of the doll.

. . . .

"Q [By the prosecutor] [A.], was it between your legs, or was it touching your genital area?

"A *Genital area.*

"Q You indicated that you know what your vagina is?

"A (Nods head affirmatively.)

"Q Did his penis go inside of your vagina?

"[Defense counsel]: I would object without some foundation as to what her definition is.

"THE COURT: Let's go a little further on foundation. Sustained for foundational reasons.

"Q [By the prosecutor] [A.], where is your vagina? Can you describe where that is?

"A (No response.)

"Q Can you show on the doll where the doll's vagina would be?

"A Right here (indicating).

"[The prosecutor]: Your Honor, may the record reflect that the witnes [sic] has identified *between the folds of the doll's genital area.*

"THE COURT: [Defense counsel.]

"[Defense counsel]: I am not sure that that is where that was. Maybe she can just do that again.

"THE COURT: Go ahead.

"Q [By the prosecutor] [A.], is your vagina the hole that is near your genital area, or right at your genital area?

"A Right at.

"Q I didn't hear you.

"A Right at your genital area.

"A Now, what part of your genital area did his penis touch?

"A (No response.)

. . . .

"Q Can you describe where on your body his penis touched on this occasion, on the weekend before Mother's Day, that Saturday before?

"A (Girl indicating.)

"[The prosecutor]: Okay. Your Honor, I would ask the record reflect that the witness has domonstrated [sic] or pointed to the *labial area* on the doll.

"[Defense counsel]: I will stipulate that that is where she touched, *the labial folds.*

"THE COURT: The record will so show.

"Q [By the prosecutor]: [A.], did any part of his penis touch the outside of your vagina?

"[Defense counsel]: Object as to the form of the specificity of what "outside of the vagina" means.

"THE COURT: Restate your question.

"Q [By the prosecutor] [A.], did his penis go into your hole at that time?

"[Defense counsel]: We'll object again to the leading nature of the question. She responded without leading earlier.

"[The prosecutor]: Your Honor, I don't think that is an inappropriate question.

"THE COURT: I am going to allow it. Objection overruled. She may answer.

"THE WITNESS: No.

"Q [By the prosecutor] Did his penis touch just outside of your hole, or your vagina?

"A On that occasion.

"Q It did?

"A (Nods head affirmatively.)

"[The prosecutor]: I have no further use for the dolls at this point.

"Q ... [A.], do you remember approximately how long this lasted?

"A *About five minutes.*

. . . .

"Q Can you describe when [defendant] put his private on yours, any kind of movements that he made?

"A *He was moving all over, up and down.*

"Q Can you describe how your legs were at that time?

"A *They were spread apart.*

"Q And was it—What part of his private touched you?

"A The tip."

(Emphasis added.)

Importantly, A. did not merely testify that defendant put the tip of his penis " 'on' her labia" or "outside" of her vagina. Rather, she testified that while "[h]e was *moving* all over, up and down" for "[a]bout *five minutes*" on top of her, with her legs "spread apart," defendant "put his private on [her] private" (or in her explanatory words) his "penis" on her "vagina"—her "genital area." (Emphasis added.) Then with the doll, A. demonstrated for the members of the jury and they observed and also heard for themselves the repeated statements on the record that A. identified "between the folds of the doll's genital area," "the labial area on the doll," and "the labial folds." Certainly the jury, in applying its individual and collective experience to this case, could conclude that defendant did not merely place his penis *on* the victim's labia but that, while moving for five minutes "all over, up and down" on top of her, with her legs spread apart, his penis entered her labial folds. The very fact of defendant's weight on top of the child, together with his erratic movements and the force and time involved, supports the jury's view. Concluding otherwise insults common sense and the experience of all those sexually literate.

Given the above-noted evidence alone,[18] and the reasonable inferences which the jury with its knowledge, awareness, and understanding could reasonably draw therefrom, it is incredulous to conclude that there was insufficient evidence from which the jury could appropriately find that defendant even slightly entered A.'s labial folds and was guilty of the crime charged. Such conclusion subverts the judgment of the jury, in total disregard of our established standard of review.[19]

Furthermore, the conclusion reached today ignores the very essence of the crime of rape the statute itself seeks to protect. In this regard, Justice Straup more than sixty years ago stated, "The essential of the crime of rape 'is not the fact of the intercourse, but the injury and outrage to the modesty and feelings of the [victim], by means of the carnal knowledge effected by force.' "[20] Applying this concept to the evidence at hand certainly emphasizes and supports both the reasonableness and the appropriateness of the jury's verdict in this case.

---

**18.** A plain and fair reading of the evidence itself indicates that A.'s testimony and demonstration with the doll, together with the reasonable inferences drawn therefrom, do not lead "only to the conclusion that the victim was demonstrating that defendant had placed his penis *on* her labial folds." Majority opinion at note 1 (emphasis in original). Also, this Court should not presume "jury confusion" or that in order to implicitly find that penetration occurred, the jury must have disregarded the trial court's express instruction which prohibited the jury from considering evidence of defendant's prior acts against A. in determining defendant's guilt of the offense with which he was charged. *See Leigh Furniture & Carpet Co. v. Isom,* 657 P.2d 293, 313 (Utah 1982) (Howe, J., concurring).

**19.** *See supra* notes 10–11.

**20.** *State v. Anderton,* 69 Utah 53, 69, 252 P. 280, 286 (1926) (Straup, J., dissenting) (citation omitted).

Finally, the conclusion reached by the majority produces an irrational and unworkable standard disadvantaging child rape victims who at the time they are violated (and possibly at the time of trial as well) are sexually uneducated, unaware, or lacking understanding regarding the term "slight" in reference to their genitalia and penetration. Indeed, in view of today's decision, only those children who are sexually aware or concentrating during such victimization will be able, in some instances, to provide sufficiently detailed testimony regarding the extent of the defendant's activity to support the majority's determination of slight penetration. Many child victims will need to become sensitive and sexually educated before trial as to their anatomy, the meaning of slight penetration, and the difference between the terms "on" and slightly "within," "between," or "into"—all in order to adequately describe such activity and terror. Also, the result today will seriously affect those child rape victims whose labial areas, because of anatomical immaturity, injury, defect, or otherwise, are incapable of being entered sufficiently to meet the majority's implicit standard regarding the element of slight penetration. And lastly, juries will no longer be able to look past the victim's use (or nonuse) of a particular preposition or choice of words and conclude that given the evidence offered by the victim, the reasonable inferences arising therefrom, and the possible immaturity or limited understanding of the child, the crime occurred.

Clearly, society does not favor such results, and the law should not encourage such effect. Accordingly, I dissent.

DURHAM, Justice: (concurring in the result of the Chief Justice's concurring and dissenting opinion)

I join in parts I through V and in the factual analysis of part VI of the Chief Justice's concurring and dissenting opinion, although I do not share his concern that the majority has established an "irrational and unworkable standard disadvantaging child rape victims." I think the legal standard employed by both the majority and the dissent is the same. This is merely a close case on the evidence, in which considerable deference is due to the inferences and conclusions made by the jury.