STATE, RESPONDENT, *v.* THOMAS J. BLUE, APPEL-
LANT.

EMBEZZLEMENT—COMMITMENT—INFORMATION—TWO COUNTS—
ELECTION.

1. The complaint filed with the magistrate, upon which the
defendant was convicted, and upon which the information
was based, charged the defendant with having—First, appro-
priated money to his own use, and to the use of parties
unknown; second, for having failed and neglected to keep
the same in his possession until delivered and paid by au-
thority of law; and, third, with having deposited the same
with G. A. R. & Co., a banking corporation. *Held,* that the
complaint charged but one offense, agreeably to section 4933,
Comp. Laws, 1888; and that the information was not bad
upon demurrer, in view of the fact that the commitment
stated that the appropriation was made by the "unlawful
and felonious depositing of public money by a public officer
with a bank, especially as the prosecution was compelled to
elect on which count they would rely, and in view of the
further fact that the two counts contained in the information
charged the same offense, committed at the same time and
place, and related to the same subject-matter.

2. *Criminal Intent—Statutory Provisions.*
Where a person violates a statute making an act criminal,
and no reference is made in the statute to a criminal intent,
a general provision of the law, which provides that "in every
crime or public offense there must exist a union or joint
operation of act and intent, or criminal negligence," must
control; and it is error to withhold the question of intent from
the jury. The statute at most, simply shifts the burden of
proof, and does not dispense with the criminal intent.

3. *Evidence of Good Character.*
In all criminal prosecutions, whatever the degree of the offense
with which the accused is charged, evidence of his good

character may be introduced by him without reference to the apparently conclusive or inconclusive character of the other evidence.

(No. 903. Decided June 4, 1898.)

Appeal from district court, Fifth district; W. M. Mc-Carty, *Judge.*

Thomas J. Blue was convicted of embezzlement, and appeals. *Reversed.*

*Williams, Van Cott & Sutherland,* for appellant.

*A. C. Bishop, Attorney General,* for the State.

An indictment which charges several acts, any one of which would constitute an offense, but which as pleaded are parts of one and the same matter and taken together constitute an entire transaction resulting in the commission of the crime charges but one offense. *People* v. *Hill,* 3 Utah 334; *People* v. *Thompson,* 28 Cal. 215; *People* v. *Frank,* 28 Cal. 507; *People* v. *De La Guerra,* 31 Cal. 460; *People* v. *Ah Own,* 39 Cal. 604; Wharton's Criminal Law, 141.

While the general rule is that a defendant may put in issue his good character, this rule has its exceptions particularly in this class of cases. Some very eminent and respectable authorities go so far as to hold that evidence of good character cannot be proved except in doubtful cases. *Commonwealth* v. *Webster,* 5 Cush. 295; *United States* v. *Roudenbush Baldwin,* 514; *State* v. *Hammill,* 2 Parks Cr. 223; *State* v. *Cole,* 4 Park Cr., 35; *United States* v. *Smith,* 2 Bond 323. See also authorities cited in Am. and Eng. Enc., 2 Ed., Vol. 5, under note, page 868.

And while this rule may be unjustifiably severe and not

in harmony with the broader and more liberal rules that prevail at the present time, it is universally held, that while evidence of general character is admissible in a criminal prosecution it is entitled to little weight unless where the fact is dubious or the testimony presumptive. *State* v. *Wells,* 1 Am. Dec. 211; *State* v. *Barth,* 60 Am. Rep. 496; *State* v. *Northrup,* 30 Am. Rep. 408; *Dupree* v. *State,* 73 Am. Dec. 422.

He admits every material allegation charged in the information, excepting that he denies any fraudulent or criminal intent. But from the doing of this act the law presumes such intent. *State* v. *Nolan,* (Mo.), 19 S. W. Rep. 717; *Phillips* v. *State,* 17 Ga. 459; *State* v. *Hurds,* 19 Neb. 317.

The intent which is mentioned in the text books of criminal law as essential to constitute a crime is not necessarily an evil or wrongful intent beyond that which is involved in the prohibited act. Whatever one voluntarily does he of course intends; and whenever the statute has made an act criminal a party voluntarily doing the prohibited act is chargeable with the crime. *State* v. *Trolson,* (Nev.) 32 Pac. 930; *State* v. *Halsted,* 41 N. J. L. 552; *State* v. *Gwoonow,* 65 Me. 30. Bishop on Criminal Law, secs. 295, 296 and 300, and cases there cited.

BARTCH, J.:

The defendant was convicted of the crime of embezzlement, and, upon his motion in arrest of judgment having been overruled, and sentence of imprisonment pronounced he appealed to this court. Upon his arraignment he demurred to the information, inter alia, on the grounds that it charged two offenses, neither of which was charged in the complaint filed before the committing magistrate, and

17 UTAH—12

that he had never had a hearing or been committed or
bound over on either of the charges contained in the in-
formation. The demurrer was overruled, and the action
of the court is assigned as error.

The complaint filed with the magistrate, and upon
which the defendant was committed and the prosecution
founded, charged him, while treasurer of Eureka City, and
having in his custody $674.68 of the city's money, with
having (1) appropriated the same to his own use, and to
the use of parties unknown; (2) failed and neglected to
keep the same in his possession until delivered and paid
by authority of law; and (3) deposited the same with
George Arthur Rice & Co., a banking corporation of Eu-
reka City. As will be observed, the complaint contains
three counts, each of which relates to the same transac-
tion. It thus charges but one offense, agreeably to sec-
tion 4933, Comp. Laws Utah 1888. The offense is con-
tained in the first and third counts, and the charge in
effect is that the accused appropriated and embezzled the
money by depositing it with the corporation mentioned.
This disposition of the public money was one of the essen-
tial facts in the establishment of the charge against the
prisoner, and the failure to keep the same, which is
charged in the second count, was simply the corollary of
the charge in the first and third counts. The commit-
ment, as appears from the transcript, among other things
relating to the same transaction, states that the appro-
priation was made by the "unlawful and felonious deposit-
ing of public money by a public officer with a bank," and
that the defendant committed the offense. In view of
this commitment, we think the objections to the informa-
tion cannot avail the defendant, especially as the prose-
cution were compelled to elect on which count they would

rely. It is true, the information contained two counts; but both counts charge the same offense, committed at the same time and place, and relate to the same subject-matter. This is a substantial compliance with the law in force at the time the offense was alleged to have been committed.

The appellant also complains of the instructions of the court to the jury, respecting the question of intent. It appears from the evidence that, at the time of the commission of the alleged offense, the defendant was the treasurer of Eureka City; that, as such treasurer, he received from time to time various sums of money, and deposited the same with the bank of George Arthur Rice & Co., of which bank he was cashier, and was also a member of the company; that the bank made a deed of assignment, whereby it conveyed all its property, including the city's money, to one William Hatfield, for the benefit of its creditors; that at the time of the assignment there was a balance due the city of $674.68; and that the defendant was a party to the assignment. Under these facts, the court charged the jury, in effect, that it was their duty to find the defendant guilty if they found that he had knowingly and intentionally, by general assignment, turned over his property, and the money in question, to the assignee for the benefit of his creditors and those of the bank, and it mattered not whether he did it with a felonious intent to defraud and cheat the city; and refused to charge, as requested by the defendant, that, in order to convict, they must find that he transferred the money in question to the assignee with the fraudulent intent to cheat and defraud the city. In giving this instruction and refusing the request, we think the court took an incorrect view of the law under our statutes. This would be so even if it were admitted that the first count of the infor-

mation, the one under which the case was finally submitted to the jury, was drawn under subdivision 1, § 4603, Comp. Laws Utah 1888. While in this subdivision there is no special reference respecting the intent with which an appropriation of public money must be made in order to constitute a felony, still, from the language employed in the provision, and in the absence of distinct legislative command, the court will not infer that it was the purpose of the legislature to punish a man for an act committed without a guilty mind. In such case the general provision contained in section 4383 must control. It provides: "In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence." This section is found in the Penal Code under the head "Preliminary Provisions;" and, construing it in connection with the provision of section 4603, it seems clear that the legislature did not design the punishment of a public officer for an act committed innocently, without any criminal intent.

It is quite probable, because of the presumption of wrongful intent which would arise upon proof of the act, that an information, drawn under the provisions of section 4603, which stated the offense in the words of the statute, would not be held bad for failure to aver the felonious intent; but, clearly, in such event the accused would have the legal right to rebut the presumption. The statute, at most, simply shifts the burden of proof, and does not dispense with the criminal intent. Such being the case, the court in no instance, under the statute in question, whether the intent be alleged or not, has the power to withhold the question of intent from the jury. Evil intent is the very essence of crime, and, whenever a person is convicted of an offense, such conviction carries with it the implication of moral turpitude, dishonesty, and

fraud. The principles which make it essential that an evil intent accompany the act lie at the very root of public justice. The intent has always been the test of guilt. *"Actus non facit reum nisi mens sit rea,"* is an ancient maxim, and indicates the true doctrine. In general, for an act to render a person a criminal, it must be the result of executive volition. The mind of the doer must have been criminal. This has been so from time immemorial, and neither in moral nor religious sentiment have any people entertained the idea that an act itself would make a person guilty unless the mind were so. It sometimes happens, it is true, on occasions of turmoil and excitement, when reason and justice are dethroned, that every safeguard of innocence is cast aside; but, as soon as peace and reason return, the public voice, in harmony with justice, is that an act committed when the mind is pure constitutes no offense. To prevent the punishment of the innocent, there has been ingrafted into our system of jurisprudence, as presumably in every other, the principle that the wrongful or criminal intent is the essence of crime, without which it cannot exist. This is certainly the general doctrine. If, therefore, it should eventually appear, in the case at bar, that the defendant had turned the money over to the assignee innocently, through mistake, without any intention to commit a wrong or defraud the city, it would be difficult to see how he could be punished as a criminal for the act. The criminal intent, it is true, need not necessarily be to do the very act forbidden by law; but it must, at least, be to do a wrong thing. It may be to do an act malum in se, apart from positive law, or to do a thing prohibited by common or statute law. The general rule, doubtless, is that there must be an intention to do something in itself wrong, or knowingly to break a statute, before the act done will be considered a crime. Nor,

in the case at bar, do we think the language of section 4603 is such as to make an act done apparently in violation of its provisions an exception to the rule. It is undoubtedly within the power of the legislature to enact laws which would render liable to punishment, and brand as felons, persons for the doing of acts which, at the time of their commission, they honestly believed were right and lawful. So, the legislature, in the absence of constitutional restraint, may enact a law punishing criminally a lunatic or an idiot for an act committed through the derangement of his mental faculties and the perversion of his power to reason. It is evident, however, that such enactments would not be aided by interpretation to produce such results, and that no statute will be given such effect unless it be indisputable that such is the meaning of the enactment. In Bishop on Statutory Crimes (section 132), the author says: "A statute will not generally make an act criminal, however broad may be its language, unless the offender's intent concurred with his act." So, in *Cutter* v. *State,* 36 N. J. Law, 125, it was said: "In morals, it is an evil mind which makes the offense, and this, as a general rule, has been at the root of criminal law. The consequence is that it is not to be intended that this principle is to be discarded merely on account of the generality that the lawmakers did not intend to disgrace or to punish a person who should do an act under the belief that it was lawful to do it." Bish. Cr. Law, §§ 287-289; *Queen* v. *Tolson,* 23 Q. B. Div. 168; *Bradley* v. *People* (Colo. Sup.), 9 Pac. 783; *People* v. *Wadsworth,* 63 Mich. 500; *Com.* v. *Este,* 140 Mass. 279; *Phelps* v. *People,* 55 Ill. 334; *People* v. *Hurst* (Mich.), 28 N. W. 838; *People* v. *Carrillo,* 54 Cal. 63.

The appellant further contends that the court erroneously excluded the evidence offered to prove his general

reputation for honesty and integrity. This contention is also sound. The law is well settled, at least by the weight of recent authority, that in every criminal case the defendant is entitled to prove his good character. Where one is charged with an offense, such evidence is admissible, regardless of the decisive or indecisive character of the other testimony; and it is within the province of the jury to give it such weight, in view of all the other evidence, as it may be entitled to receive. Where a person is charged with the commission of an act which is wholly inconsistent with his former conduct and uniform course of life, justice demands that, in this extreme moment of his existence, when he is about to be deprived of life or liberty, reduced to shame and disgrace, he be permitted to show the important fact of his good character. Such fact, considered in connection with the criminating facts, may of itself be sufficient to render it highly improbable that the accused would commit the crime charged, and raise a reasonable doubt in the minds of the jury. Where one has led a consistent, upright, and honest life, why should that fact not avail him when accused of an act, a conviction whereof would destroy all his future hopes and aspirations, and take from him that which can profit no man and which no man can restore? History and experience teach us that there are cases in which the accused's sole defense is a good character, and yet this may outweigh the most positive proof. Conspiracy may charge an innocent man with a crime, and forge its chain of suspicion and falsehood so skillfully that nothing but a life of unblemished integrity and honor can break it. Such evidence is clearly admissible, and may not only raise a doubt as to the defendant's guilt, but bring conviction of his innocence. "In all criminal prosecutions, whatever be the degree of the offense with which the accused is

charged, evidence of his good character may be intro-
duced by him without reference to the apparently conclu-
sive or inconclusive character of the other evidence." 5
Am. & Eng. Enc. Law (2d Ed.) 866; *People* v. *Carbutt*, 17
Mich. 8; *People* v. *Hancock*, 7 Utah 173; *State* v. *Lindley*, 51
Iowa 343; *Com.* v. *Webster*, 5 Cush. 295.

There are other questions presented in the briefs, but
we do not deem it important to discuss them. The case
is reversed and remanded.

MINER, J., concurs

QUALIFIED CONCURRENCE.

ZANE, C. J.:

The defendant was convicted of a violation of the fol-
lowing statute: "Every officer * * * of any city * * *
of this state * * * charged with the receipt, safe keeping,
transfer or disbursement of public moneys who without
authority of law appropriates the same, or any part there-
of to his own use, or to the use of an other, * * * is guilty
of a felony." Comp. Laws Utah 1888, § 4603. I am of
the opinion the evidence of intent was sufficient to con-
vict, if it proved beyond a reasonable doubt the defendant
was treasurer of Eureka City; that he had in his posses-
sion $674.68 of its money, knowing it to be such; and that
he intentionally converted it to his own use, by paying it
to his individual creditors or otherwise. He could not be
heard to say that he thought he had a right to deposit it in
the bank to his private account, and appropriate it to his
own use by devoting it to the payment of his individual
creditors. Such facts having been proven beyond a rea-
sonable doubt, the intent to violate the law is conclusively
presumed. The defendant could not be heard to say he
did not intend to violate the law. A distinction may be

made in such a case between an intent to do the unlawful act and an intent to violate the law. The defendant was required to know the law. I concur in the opinion as to the other points decided by the court.