451 P.2d 372

**The STATE of Utah, Plaintiff and Respondent,**

**v.**

**Kenneth William ERVIN and Carl Archie Andrew, Defendants and Appellants.**

**No. 11158.**

Supreme Court of Utah.

Feb. 25, 1969.

Robert Van Sciver, of Karras & Van Sciver, Salt Lake City, for appellants.

Phil L. Hansen, Atty. Gen., Gerald G. Gundry, Asst. Atty. Gen., Salt Lake City, for respondent.

CROCKETT, Chief Justice:

Kenneth William Ervin and Carl Archie Andrew jointly appeal from convictions: Ervin of assault with a deadly weapon with intent to commit robbery, and Andrew for being an accessory to that crime by harboring Ervin knowing that he had just committed a felony.[1]

Defendants contend that the evidence is insufficient to sustain the verdicts and that their convictions resulted from unfairness in the conduct of the trial because (a) the court improperly restricted their evidence concerning good character; (b) a line-up for identification was conducted in a manner designed to insure that the defendants would be identified by the victim; and other errors that we find unnecessary to discuss.

Defendant Kenneth Ervin is a 26-year-old Negro who was employed as a computer operator in Los Angeles. In June of 1967, he undertook to drive to the home of his mother, Mrs. Theola Ervin, at Rawlins, Wyoming. Near Levan, Utah, on June 25th he had car trouble and called his mother at Rawlins. In response to the call, his mother, together with her nine-year-old son, Stephen, and the other defendant, Carl Archie Andrew, described as an older Negro man, drove to Levan to help Kenneth. They fixed a tow chain to Kenneth's car and left Levan at 2 p.m. on June 26th with the intention of towing it to Rawlins. They stopped in Nephi, which is about 12 miles north of Levan, for hamburgers; and continued on to Rawlins, making several other stops along the way, mostly to put water in the car's radiator which was heating because of the tow, and arrived at Rawlins on the morning of the 27th. Two days later, on June 29th, the defendants were arrested on the charge above referred to, alleging an assault and robbery upon a Mrs. G—— J——. Her home is about five miles north of Nephi, a few blocks off the main highway, U.S. 91. Her testimony is that shortly after 4 p.m. on June 26th, two Negro men came to her home, entered and asked

---

1. In this state all accessories are principals except accessory after the fact. §§ 76–1–44, 76–1–45 and 77–21–39, U.C.A. 1953. See also People v. Chadwick, 7 Utah 134, 138, 25 P. 737.

that a jug they had be filled with water. She told them there was a tap outside. The "older fellow" went outside. The younger man made an attack on her in which he subjected her to "improper advances" on her person and she was beaten over the head with a pistol, robbed of a watch and $7 cash.

█ Though, as will be seen below, it is not determinative of the critical issue here, it should be stated in summary that there is sharp conflict in the evidence as to whether the defendants' two cars were along the highway in the vicinity of Nephi in the afternoon of the 26th as late as 4 p. m., as contended by the State; or whether they would have been much further along the road toward Rawlins long before that time. Were the fact critical, we would have to accept that version which would reconcile with the verdict, but there are other problems of greater import here.

### Restriction on Character Evidence

When counsel for the defendants was seeking to elicit character evidence and asked a defense witness about the reputation of the defendants the judge stated as follows:

> The only question which you may ask is to the truthfulness and veracity. You may first inquire as to whether or not the witness knows the general reputation in the community in which they live for truthfulness. If she answers that question yes, then you may ask what that reputation is. * * *

█ This was too restrictive a limitation. Evidence of good character may be considered by the jury for whatever value or persuasiveness they think it should have as bearing generally upon the propensity of the defendant to commit crime and the likelihood of his having committed the particular crime charged. This rule goes back a long way in this state. In the case of State v. Blue,[2] Mr. Justice Bartch speaking for the court made the following statement:

> The law is well settled * * * that in every criminal case the defendant is entitled to prove his good character. Where one is charged with an offense, such evidence is admissible, regardless of the decisive or indecisive character of the other testimony; and it is within the province of the jury to give it such weight, in view of all the other evidence, as it may be entitled to receive. When a person is charged with the commission of an act which is wholly inconsistent with his former conduct and uniform course of life, justice demands that, in this extreme moment of his existence, when he [may be] deprived of life or liberty, reduced to shame and disgrace, he be permitted to show the important fact of his

2. 17 Utah 175, 183, 53 P. 978.

good character. *Such fact * * * may of itself be sufficient to render it highly improbable that the accused would commit the crime charged, and raise a reasonable doubt * * * experience teache[s] us that there are cases in which the accused's sole defense is a good character * * *.* [Emphasis added.] [3]

■ If there is to be any finer focus placed upon the consideration of the character evidence than as stated above, the logical procedure would be, as is sometimes done, to direct it to the particular trait which would be involved in the commission of the crime charged.[4] E.g., for stealing or embezzlement—honesty and integrity; for crimes involving moral turpitude—high moral standards, or other characteristics relating to the propensity to commit the particular crime.[5] As to the crime here charged, which involved both stealing and violence, the jury should not have been precluded from considering the traits of honesty and integrity, nor of being peaceable and law abiding, which are included in general good character. Under the theory of the facts as claimed by the defense, that they were not in the vicinity at the time the offense was committed, the evidence concerning good character may well have been of critical importance in this case as indicated by Justice Bartch in State v. Blue, referred to above, and the jury should have been allowed to consider it generally as bearing upon the likelihood of the defendants' having committed the crime in question. Therefore to restrict it to the question as to their truthfulness and veracity was prejudicial error.

## Claimed Impropriety in the Line-up

■ In view of the remand of this case, we deem it advisable to make some observations in regard to the defendants' contentions concerning the impropriety in the line-up. Their position is that placing them in a line-up of six persons: two Mexicans and two other Negroes, the latter not resembling the description the victim had given of her assailants, had the effect of being unduly persuasive upon her to identify these defendants as the men who committed the crime. We are in accord with the idea that a line-up should be neither so devised nor manipulated as to impel or to be unduly suggestive as to identification.[6] Ideally it should be regarded

3. Cf. State v. Brown, 39 Utah 140, 115 P. 994, and State v. Warner, 79 Utah 500, 291 P. 307.
4. See State v. Thompson, 58 Utah 291, 199 P. 161, 38 A.L.R. 697; and see 22A C.J.S. Criminal Law § 677(5), p. 713 and cases there cited.

5. See statement and cases concerning traits of character relating to various crimes, 22A C.J.S. Criminal Law § 677 (5) p. 714.
6. Cf. discussion in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

as having a dual purpose. On the one hand: to help in searching out and identifying those guilty of crime. On the other, the equally important corollary: to protect those who are suspected of crime but who are innocent. To best serve both purposes the procedure should be handled with caution not to place blame on the innocent, and yet not so laden with difficulties nor burdened with super-cautions as to make it impractical as a method of identifying the guilty.

■ Where it is deemed helpful to use a line-up for the purpose of making identification, it is not always possible to procure a considerable number of men who, with respect to various similarities of appearance, would be entirely ideal for the purpose. There are practical exigencies in such situations which must be dealt with in the best manner possible under the circumstances, consistent with the above stated objectives. The question whether the line-up was unfair and likely to bring about an improper identification, and thus so taint the evidence that it is unfair to use it, is something which must necessarily rest largely within the discretion of the trial court. When the question arises, it is his responsibility to inquire into the facts and make a ruling thereon. It is not clear in this record if, when or how this was done in this case. If the evidence is admitted, the procedure followed with respect to the line-up can be shown to the jury so that any question of its unfairness may be considered by the jury as bearing upon the question of the credibility of the identification, which is for the jury to determine along with all of the other evidence in the case.

The verdicts and judgment are reversed and the case remanded for such further proceedings as may be deemed advisable. No costs awarded.

CALLISTER and TUCKETT, JJ., concur.

ELLETT, Justice (concurring):

I concur, except that I do not wish to be counted as one who believes that the statements in the case of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, are based upon logic, reason, or common sense. If a witness makes an in-court identification of a defendant, the prior line-up poisons nothing. It merely goes to the weight and credibility to be given by the jury to the testimony of the witness.

HENRIOD, J., dissents.