STATE of Utah, Plaintiff and Appellee,

v.

Francisco ALONZO and Miguel Alonzo–Nolasco, Defendants and Appellants.

No. 960048–CA.

Court of Appeals of Utah.

Jan. 9, 1997.

Steven G. Shapiro and Ralph W. Dellapiana, Salt Lake City, for Appellants.

Cy H. Castle, Salt Lake City, for Appellee.

Before WILKINS, BENCH and JACKSON, JJ.

## OPINION

JACKSON, Judge:

Defendants Francisco Alonzo and Miguel Alonzo–Nolasco appeal their jury convictions for assaulting a police officer, a class A misdemeanor, in violation of Utah Code Ann. § 76–5–102.4 (1995). Miguel Alonzo–Nolasco also appeals his conviction for interfering with an arrest, a class B misdemeanor, in violation of Utah Code Ann. § 76–8–305 (1995). We affirm.

## FACTS

On appeal from a jury verdict, we recite the facts from the record in the light most favorable to the verdict. *State v. Verde,* 770 P.2d 116, 117 (Utah 1989).

On the evening of July 23, 1995, Francisco Alonzo was visiting his brother Miguel Alonzo–Nolasco at the apartment Miguel shared with their cousin. Francisco and Miguel left the apartment to buy wine coolers. When they returned, their cousin was gone and they were locked out of the apartment. They knocked loudly several times, and then sat down in the hallway outside the apartment to wait for their cousin to return with the key. Francisco testified at trial that he drank two wine coolers, and eventually they both fell asleep.

Responding to a call that two people had "passed out" in the hallway of an apartment building, Salt Lake City Police Officer John

Lundgren arrived on the scene, followed by Officer Shauna Bills. Both officers were accompanied by civilians—Officer Lundgren was accompanied by Judith Adams, a member of a citizen watch group, and Officer Bills was accompanied by a volunteer with the police department.

At trial, the officers testified that the hallway and defendants smelled of alcohol, and that they first removed two or more empty wine cooler bottles near defendants before attempting to awaken them. The officers then announced that they were Salt Lake City police and yelled several times for defendants to wake up. When the defendants did not awake, the officers turned to other methods to wake defendants. Officer Bills was able to wake Miguel quickly by shaking his leg; she then placed handcuffs on his wrists. Officer Lundgren had more difficulty waking Francisco. Officer Lundgren first attempted to wake Francisco by applying pressure behind Francisco's ear with his finger. When this failed, Officer Lundgren rubbed Francisco's chest vigorously with a flashlight. When Francisco awoke, he struggled with Officer Lundgren, grabbing the officer's shirt, kicking, and attempting to bite him. Officer Lundgren attempted to handcuff Francisco, but was unable to grab both of Francisco's hands. Officer Lundgren then began to strike Francisco in the midsection with his fist, telling Francisco to give him his hands. In this struggle, Francisco rolled over onto his stomach.

When Officer Bills heard Francisco and Officer Lundgren struggling, she left Miguel and went to aid Officer Lundgren. Officer Bills sat on Francisco's legs, and Francisco started kicking her in the back. Miguel had also moved closer to the officers and started kicking at them, hitting them in the face. Judith Adams, who was standing nearby in the stairway, then told the officers that Francisco was attempting to grab Officer Bills's gun. Officer Lundgren took out his pepper spray and called for backup. He then sprayed Francisco in the face with the pepper spray. Francisco let go of the gun, but still continued to struggle.

Officer Jeffrey Webb then arrived, responding to the call for backup. He attempt-

ed to grab Francisco's hands, but was unable to do so. Officer Webb then struck Francisco in the rib cage, while instructing him to stop resisting and put his hands behind his back. When Francisco put his hands behind his back, the officers handcuffed him. Other officers had arrived by this time, and they helped take defendants to a police van waiting outside.

The officers placed Francisco in the van without further incident. They had difficulty, however, placing Miguel in the van. When Miguel struggled, they took him from the van and placed him on the ground. One officer testified at trial that it was at this point that he saw that Miguel's face was bleeding, and that he had assumed that Miguel had been injured by hitting something hard either when the officers took him out of the van, or when they placed him on the ground. However, Judith Adams testified that as the officers were attempting to place Miguel in the van, Miguel was kicked in the face by his brother.

Defendants presented a different version of what happened when the officers arrived and awakened them. Francisco testified at trial that the first thing he saw when he awoke was blood on his brother's face. Francisco testified that he tried to use his body to cover Miguel to protect him from the officers' blows, but that he was pulled back by the hair. He testified that he was himself kicked and punched repeatedly, and that he turned over on his stomach to protect himself from the blows. He also testified that he did not attempt to take a gun from any of the officers, or did not remember trying to do so, and that he did not attack his brother. Miguel also testified that he was struck in the nose before he and his brother were maced, while still in the hallway of the apartment building.

Before being transported to the county jail, defendants were treated by ambulance personnel for injuries resulting from being maced in the face. Miguel was taken to the hospital to be treated for a broken nose before he was taken to jail. Miguel also had rug burns on his face, and both defendants had numerous bruises.

On November 1, 1995, a jury found both defendants guilty of two counts of assault on a police officer, and found Miguel guilty of one count of interfering with legal arrest.

## ISSUES

On appeal, defendants argue the trial judge committed reversible error by: (1) failing to recuse himself after making biased statements regarding defendants' guilt; (2) commenting favorably on the prosecution's evidence; (3) excluding character evidence of one of the officers; (4) excluding testimony by one of the defendants as to his good character; (5) restricting defense counsel's closing argument; and (6) refusing to give a self-defense instruction as requested by defense counsel. Defendants also argue that they were denied a fair trial under the cumulative error doctrine.

## ANALYSIS

### I. Recusal of Trial Judge

Defendants first argue the trial judge, Judge S. Mark Johnson, committed reversible error by failing to recuse himself after making biased statements regarding defendants' guilt. Defendants assert that, during the jury selection process, the trial judge made comments in chambers in the presence of counsel for both parties that showed actual bias. Defendants allege the judge stated that defense counsel should have their clients waive their right to a trial by jury, and that he would then find the defendants guilty and they could end the matter. Defendants further allege that the trial judge suggested he knew or everyone knew that defendants were guilty, and that he stated that he was a former prosecutor and was thus aware of how these things went.

After these alleged comments were made, defense counsel filed a motion for the trial judge to recuse himself and submitted affidavits detailing their versions of the trial judge's comments. The trial judge referred the affidavits to Third Circuit Court Judge Phillip Palmer, who found that, based on the affidavits, there was "not sufficient cause to disqualify Judge S. Mark Johnson from presiding over a jury trial of the defendant[s]."

In *State v. Neeley,* 748 P.2d 1091 (Utah), *cert. denied,* 487 U.S. 1220, 108 S.Ct. 2876, 101 L.Ed.2d 911 (1988), the Utah Supreme Court set out the standard for whether a trial judge's failure to recuse himself or herself constitutes reversible error. In *Neeley,* the court stated that, under the Utah Code of Judicial Conduct, "a judge *should* recuse himself when his 'impartiality' might reasonably be questioned." *Id.* at 1094. However, a trial judge's failure to observe this standard "does not necessarily mean that the defendant is entitled to a new trial," for "[t]he parameters of defendants' constitutional rights to a fair trial are defined by [Rule 29 of the Utah Rules of Criminal Procedure] and relevant case law, *not* the Code of Judicial Conduct." *Id.* Thus, while recommending that a judge recuse himself or herself "where there is a colorable claim of bias or prejudice," the *Neeley* court held that "absent a showing of actual bias or an abuse of discretion, failure to recuse does not constitute reversible error as long as the requirements of [Rule 29] are met." *Id.* at 1094–95.

Rule 29 provides in part:

(c) If the prosecution or a defendant in any criminal action or proceeding files an affidavit that the judge before whom the action or proceeding is to be tried or heard has a bias or prejudice, either against the party or his attorney or in favor of any opposing party to the suit, the judge shall proceed no further until the challenge is disposed of. . . .

(d) If the challenged judge questions the sufficiency of the allegation of disqualification, he shall enter an order directing that a copy be forthwith certified to another named judge of the same court . . . , which judge shall then pass upon the legal sufficiency of the allegations. . . . If the judge to whom the affidavit is certified does not find the affidavit to be legally sufficient, he shall enter a finding to that effect and the challenged judge shall proceed with the case or proceeding.

Utah R.Crim. P. 29(c), (d).

■ In this case, the trial judge followed the procedure of Rule 29 by certifying the affidavits alleging bias to another judge for a

ruling. The second judge entered an order stating that, after examining the memorandum and affidavits in support of the motion to disqualify the trial judge, the second judge did not find sufficient cause to disqualify the trial judge. The second judge therefore referred the case back to the trial judge. The trial judge then proceeded with the case, as required by Rule 29. Because the trial judge followed the requirements of Rule 29, defendants must show actual bias or an abuse of discretion to prevail under the supreme court's holding in *Neeley*. *Neeley*, 748 P.2d at 1094–95.

Defendants argue the trial judge's comments constitute actual bias, and that, consequently, his failure to recuse himself requires reversal. The State does not dispute that the trial judge made some comment indicating that defendants should waive their right to a jury trial, but argue that it was said in a joking tone and was not an expression of actual bias against defendants.

We have no record of the actual language used by the trial judge, and the parties differ in their explanation of the context of the judge's comments and in their interpretation of the comments. Further, a review of the record does not reveal any other instances supporting defendants' claim of actual bias. Under these circumstances, where there is no record of the judge's comments, where the parties offer differing accounts of the judge's comments, and where there is no evidence in the record to support a claim of actual bias, we conclude the affidavits alleging bias are insufficient to support defendants' claim of actual bias. Thus, because defendants have not demonstrated actual bias, and because the trial judge complied with Rule 29, we conclude that there was no reversible error based on the trial judge's failure to recuse himself.

Notwithstanding the Utah Supreme Court's holding in *Neeley*, that absent a showing of actual bias or abuse of discretion there is no reversible error if the requirements of Rule 29 are met, the supreme court has also suggested that a trial judge's failure

to recuse himself or herself based on the appearance of bias may be grounds for reversal if actual prejudice is shown. *See State v. Gardner*, 789 P.2d 273, 278 (Utah 1989), *cert. denied*, 494 U.S. 1090, 110 S.Ct. 1837, 108 L.Ed.2d 965 (1990). In *Gardner*, the defendant did not allege actual bias on the part of the trial judge, but argued the trial judge should have recused himself based on the appearance of bias. The court first agreed that a judge *should* recuse himself or herself where his or her impartiality might reasonably be questioned. *Id.* However, the court stated that the "[f]ailure of a trial judge to recuse even where he [or she] should have, based on the appearance of possible bias or prejudice, does not require reversal unless the 'substantial rights of the party are affected.'"[1] *Id.* (quoting Utah R.Crim. P. 30). The court continued by stating that the test for determining whether the substantial rights of the party are affected, or whether there is harmless error, is whether "'there was a reasonable likelihood of a more favorable result for the defendant.'" *Id.* (quoting *State v. Hutchison*, 655 P.2d 635, 637 (Utah 1982)). The court concluded that, because the defendant did not show any "actual prejudice," any error of the trial judge in failing to recuse himself was harmless. *Id.*

■ Here, although we do not find the affidavits sufficient to support a finding of actual bias, we do find that the comments, even given the interpretation urged by the State, created an appearance of bias. The trial judge's comments suggested he had formed an opinion as to defendants' guilt even before the trial began. However, even if this court were to conclude that the trial judge *should* have recused himself, based on an appearance of bias, defendants have not shown any actual prejudice resulting from the failure of the trial judge to recuse himself. Instead, we conclude that, had the judge recused himself, there was nevertheless no reasonable likelihood of a more favorable result for defendants. Defendants' guilt or innocence was determined by a jury, *see State v. Ontiveros*, 835 P.2d 201, 204 (Utah

---

1. The *Gardner* court did not discuss whether the requirements of Rule 29 were met, but did state that the defendant submitted an affidavit alleging bias and prejudice. *State v. Gardner*, 789 P.2d 273, 278 (Utah 1989), *cert. denied*, 494 U.S. 1090, 110 S.Ct. 1837, 108 L.Ed.2d 965 (1990).

App.1992), and the judge's statements were made before trial in chambers, and were therefore not made in the jury's presence. Further, as stated above, our review of the record does not reveal any instances of actual bias. Given these factors, any error by the trial judge in failing to recuse himself based on an appearance of bias does not warrant reversal in this case.

## II. Trial Judge's Comments on the Evidence

Defendants also argue that the judge commented favorably on the prosecution's evidence, and that these comments prejudiced defendants' right to a fair trial, thus warranting reversal.

■ A court may not comment on the weight of the evidence or the merits of the case in such a way as to indicate that the court favors the claims or positions of either party. *See State v. Larson,* 775 P.2d 415, 419–20 (Utah 1989); *State v. Sanders,* 27 Utah 2d 354, 362, 496 P.2d 270, 275 (1972). A court also "may not indicate to a jury that evidence is either weak or convincing." *State v. Rosenbaum,* 22 Utah 2d 159, 160, 449 P.2d 999, 1000 (1969). A court may, however, explain its reason for excluding or allowing certain evidence. *See Larson,* 775 P.2d at 420.

■ Defendants point to three instances during which they argue the judge improperly commented on evidence. These three instances occurred while the prosecution was presenting a hypothetical to an expert witness to establish whether excessive force was used by the police officers.

First, in overruling an objection that, under the facts presented in the hypothetical, the expert witness was not qualified to determine whether excessive force was used, the trial judge stated: "That judgment will ultimately be made as a question of fact by the jury. But this witness'[s] testimony may assist the jury. It's probative. As I say, this is the first real down-to-earth evidence that we've had so far in this case as to this very issue."

The second instance occurred when the trial judge overruled an objection that the prosecution's question to the expert witness was confusing and that the prosecutor was "leading [the witness] on through a change from the hypothetical." The judge expressed some concern over the prosecution's changing use of the hypothetical, but also stated that "when you first asked [the hypothetical question], I thought you did an excellent job, and you did the proper thing, let's put it that way, and included [in the hypothetical] all of the elements with the exception of one, possibly."

The third instance arose when defense counsel objected that the hypothetical was being couched by the prosecutor as a presentation of the evidence and not a hypothetical, and that the hypothetical was a mischaracterization of the facts in evidence. The judge responded: "Well, I don't think it's a mischaracterization of the facts in evidence."

Defendants argue that portions of these statements made by the judge constituted improper comments on the quality of the evidence presented by the prosecution. However, after reviewing the record and viewing these comments in context, we conclude that the comments were not improper, but were merely explanations by the trial judge for overruling defense counsel's objections. Additionally, in response to defense counsel's objection to the prosecution's presentation of the hypothetical, and the suggestion that the hypothetical was a correct characterization of the facts of the case, the court immediately gave a curative instruction. *See Larson,* 775 P.2d at 420. In the instruction, the court indicated that any comment he had made suggesting that the hypothetical offered by the prosecution posed the facts of the case was "a gross error," and emphasized that "[t]he facts will be determined by the jury, as I've instructed you in the past. You're the judges of the facts, not me, so you must disregard that if I did, in fact, say the hypothetical facts of the case."

## III. Trial Judge's Exclusion of Character Evidence

Defendants also argue the trial judge improperly excluded evidence of the allegedly violent character of one of the officers and

evidence of Francisco's good character. In general, we review the trial court's determination of the admissibility of evidence under a correctness standard. *State v. Diaz,* 859 P.2d 19, 23 (Utah App.1993), *cert. denied,* 878 P.2d 1154 (Utah 1994). However, "[i]n reviewing a trial court's ruling on the admissibility of evidence under [R]ule 403, we will not reverse the trial court's determination absent an abuse of discretion." *State v. Troyer,* 910 P.2d 1182, 1191 (Utah 1995). "Thus, this court will not overturn a trial court's finding that the evidence was inadmissible under [R]ule 403 unless it was 'beyond the limits of reasonability.'" *Id.* (quoting *State v. Dunn,* 850 P.2d 1201, 1221 (Utah 1993)); *see also State v. Featherson,* 781 P.2d 424, 431 (Utah 1989) (" '[W]e are cognizant of the rule that the appraisal of the probative and prejudicial value of evidence under [R]ule 403 is generally entrusted to the sound discretion of the trial judge and will not be upset on appeal absent manifest error.'" (quoting *State v. Maurer,* 770 P.2d 981, 983 (Utah 1989))).

 An erroneous decision to exclude or admit evidence does not constitute reversible error unless the error is harmful. *See State v. Archuleta,* 850 P.2d 1232, 1241 (Utah 1993). An error is harmful " 'if absent the error there is a reasonable likelihood of an outcome more favorable to the defendant.'" *State v. White,* 880 P.2d 18, 21 (Utah App. 1994) (quoting *Dunn,* 850 P.2d at 1221); *see also Featherson,* 781 P.2d at 431. In other words, "[f]or an error to require reversal, the likelihood of a different outcome must be sufficiently high to undermine confidence in the verdict." *State v. Knight,* 734 P.2d 913, 920 (Utah 1987).

Defendants first argue the trial court erred in excluding evidence that Officer Lundgren had been found by the police department to have violated department policy in his use of pepper spray in a prior incident. Defendants assert that evidence of this prior incident was admissible under Utah Rules of Evidence 404 and 405(b), and that the trial court improperly used Rule 403 to exclude the evidence. In addition, defendants assert that the trial judge used the wrong standard under Rule 403 because he referred to the

test as being whether the danger of undue prejudice "outweighs" the probative value, and not whether it "substantially outweighs" the probative value. Defendants also assert that the judge applied the test improperly because, in response to the question of who was prejudiced by the admission of the evidence, he stated that the prejudice "runs to the State of Utah. The people of this community. If it is unfair prejudice. That's who it runs to. Runs to the prosecution."

The State asserts that the judge properly excluded the evidence under Rule 403, in part because the incident involving Officer Lundgren does not show that he has a character trait for excessive force. The State asserts that the police department's sustaining of the complaint for inappropriate use of pepper spray does not necessarily mean that Officer Lundgren used excessive force. Instead, the State argues that this only means Officer Lundgren violated department policy and procedure for using pepper spray. The State notes that this is supported by the fact that although the claim of inappropriate use of pepper spray was sustained, Officer Lundgren was exonerated of a claim of inappropriate use of force arising from the same incident. The State also argues that the circumstances of the prior incident were unrelated to the instant case, and that, had the court admitted the evidence, the necessity of explaining the different circumstances of the prior incident would have caused undue delay and distracted the jury from its role in the case of determining the guilt or innocence of defendants, and not the guilt or innocence of Officer Lundgren.

 Although the trial court did not provide any specific findings regarding his exclusion of the evidence under Rule 403, beyond asserting that the prejudice outweighed the probative value, "we will 'affirm if we can find some basis in the record for concluding that the trial court's action falls within the limits of permissible discretion under [R]ule 403.'" *State v. Auble,* 754 P.2d 935, 937 (Utah 1988) (citation omitted). Further, we can find the trial court properly applied Rule 403 in making its decision even though the trial court did not use the exact language of Rule 403. *See Troyer,* 910 P.2d

at 1191 (finding trial court employed Rule 403 in making its decision even though it did not specifically term its analysis "a Rule 403 analysis"); *see also Hall v. Process Instruments & Control, Inc.,* 890 P.2d 1024, 1027 (Utah 1995) (stating exact language or terminology is not conclusive as to whether trial court employed correct analysis).

■ In this case, defendants have not shown that the trial judge's exclusion of the evidence was beyond the limits of reasonability. For example, in light of the State's arguments that the circumstances of the prior incident were different from the present case, and given that Officer Lundgren was exonerated from a claim of inappropriate use of force arising from the same incident, the trial court could reasonably have determined that the probative value of the evidence, for purposes of indicating the officer's propensity to use excessive force, was substantially outweighed by the tendency of the evidence to mislead the jury or confuse the issues.[2] We therefore determine that the trial court's exclusion of the evidence on Rule 403 grounds was not an abuse of discretion.

Even if this court were to determine, however, that the court erred in excluding the evidence of the officer's character, defendants must still establish that this error was harmful to require reversal. Defendants assert that their "substantial rights were adversely affected" by the exclusion of the evidence because the excluded evidence would have supported defendants' claim of reasonable self defense. However, after reviewing defendants' contention, we conclude that they have not established that there is a reasonable likelihood of a more favorable result for the defendants had the evidence been admitted.

■ Defendant Francisco Alonzo also argues the trial judge improperly refused to admit evidence of his good character when the judge struck Francisco's response to defense counsel's question, "Are you the type of person who would start a fight with the police?" Francisco argues that evidence of the accused's character for peacefulness is relevant in assault cases, and specifically relevant in this case to the issues of whether the police used excessive force and whether or not defendants were the aggressors.

Rule 404(a) of the Utah Rules of Evidence specifically permits an accused to offer "[e]vidence of a pertinent trait of his [or her] character" for the purpose of "proving that he [or she] acted in conformity therewith on a particular occasion." The Utah Supreme Court has likewise held that "[e]vidence of [the defendant's] good character may be considered by the jury for whatever value or persuasiveness they think it should have as bearing generally upon the propensity of the defendant to commit crime and the likelihood of his [or her] having committed the particular crime charged." *State v. Ervin,* 22 Utah 2d 216, 219, 451 P.2d 372, 373 (1969). In *Ervin,* the court further stated that such character evidence " 'is admissible, regardless of the decisive or indecisive character of the other testimony; and it is within the province of the jury to give it such weight, in view of all the other evidence, as it may be entitled to receive.' " *Id.* at 374 (citation omitted). The court also suggested that where the crime charged involves violence, the defendant should be allowed to present evidence as to being peaceable and law abiding. *Id.* In this case, because Francisco was charged with a crime of assault, we conclude the proffered testimony was relevant.

■ Nevertheless, even though the evidence was relevant, Francisco has not shown that the trial court's error in striking his testimony as to his character was harmful. Defendants' assertion that "the error in excluding relevant character evidence affected their substantial rights" is not sufficient to establish that there is a reasonable likelihood of a more favorable result for defendants had Francisco's testimony been allowed.

## IV. Limitation of Closing Argument

■ In closing argument, defense counsel argued, in response to the prosecution's suggestion that defendants had reason to lie,

---

**2.** We further note that, given our discussion below of the supreme court's holding in *State v. Gardiner,* 814 P.2d 568 (Utah 1991), there is an issue as to whether evidence of the officer's alleged use of excessive force on a prior occasion was relevant in this case. *See infra* note 4.

that the police officers also had motivation to lie. Defense counsel then stated, "You don't believe that, you ask those Rodney King cops that are doing time in the Federal pen what it's like to beat on somebody. What it's like to beat on somebody and then go to jail—." In response to an objection, defense counsel further stated that the defense was using the Rodney King incident to illustrate the proposition that "police officers who violate the civil rights of defendants can go to jail for it" and "can lose their job[s] for it." The trial court then instructed the jury that "whether the officers lose their jobs or not ... is completely immaterial and has no place in your deliberations." Defendants argue the trial court erred in preventing defense counsel from referring to the Rodney King officers to make an argument as to the possible motivation of the prosecution witnesses to lie and in instructing the jury that such arguments had no place in their deliberations.[3]

"Counsel for both sides have considerable latitude in their closing arguments. They have the right to fully discuss from their perspectives the evidence and all inferences and deductions it supports." *State v. Dibello*, 780 P.2d 1221, 1225 (Utah 1989). However, "counsel exceeds the bounds of this discretion and commits error if he or she calls to the jury's attention material that the jury would not be justified in considering in reaching its verdict." *Id.*

In this case, the trial court's restrictions on defense counsel's references to the "Rodney King" officers were not improper. Although counsel has considerable latitude in closing arguments, the trial court could have reasonably concluded that defense counsel was exceeding the bounds of this discretion when counsel referred to the Rodney King officers. The trial court could have determined that defense counsel's references to Rodney King were an attempt to inflame the jury or suggest that because the Rodney King officers were found guilty, the officers in this case were also guilty of using excessive force. Further, any suggestion by the trial court that the jury could not consider the officers' motivation to lie was corrected by the court. The court clarified that the jury could consider defense counsel's arguments involving the Rodney King officers for the purpose of weighing "the credibility of the witnesses, if they want to examine it in that way."

## V. Refusal to Give Jury Instruction

Defendants also argue that the trial judge improperly refused to give defendants' proposed self-defense jury instructions. "A trial court's refusal to give a jury instruction presents a question of law, which we review for correctness, giving no particular deference to the trial court." *State v. Quada*, 918 P.2d 883, 885 (Utah App.1996). " 'Failure to give requested jury instructions constitutes reversible error only if their omission tends to mislead the jury to the prejudice of the complaining party or insufficiently or erroneously advises the jury on the law.' " *Summerill v. Shipley*, 890 P.2d 1042, 1045 (Utah App.1995) (citation omitted).

Although defendants have the right to have their "theory of the case presented to the jury in a clear and understandable way," *State v. Potter*, 627 P.2d 75, 78 (Utah 1981), the trial court does not err by refusing " 'a proposed instruction if the point is properly covered in the other instructions,' " *State v. Hamilton*, 827 P.2d 232, 238 (Utah 1992) (citations omitted). Defendants are also not entitled to an instruction that "does not accurately state the applicable law." *State v. James*, 819 P.2d 781, 799 (Utah 1991).

Defendants argue the trial court erred in refusing to give their proposed jury instructions, which referred specifically to "self-defense" and which were "prepared directly" from Utah Code Ann. §§ 76–2–401 and –402

---

**3.** Defendants also argue that the trial court improperly suggested no evidence existed that a person in the crowd shouted "Rodney King" at the time defendants were arrested. However, after reviewing the record, it appears that the trial court did not dispute that there had been testimony that someone in the crowd had said "Rodney King," but instead was concerned that the witness who had allegedly shouted "Rodney King" had not testified at trial and had not been subjected to cross-examination. Moreover, even if the trial court had improperly suggested that there was no evidence that someone shouted "Rodney King," defendants have not shown that they were prejudiced by the court's comment.

(1995). These sections of the Utah Code provide that "[a] person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that force is necessary to defend himself [or herself] or a third person against such other's imminent use of unlawful force." *Id.* § 76–2–402(1).

We first note that, although the trial court did not allow defendants' proposed jury instructions that were taken directly from these sections of the Utah Code, defendants' self-defense theory of the case was presented to the jury through another jury instruction. Jury Instruction No. 17 stated: "If you find in this case that the officers used excessive force in making arrests, then they are acting beyond the scope of their authority and the defendants are justified to use reasonable force in protecting themselves or others."

However, even if defendants' theory of the case had not been covered in another instruction, defendants were not entitled to have their proposed self-defense instructions submitted to the jury because the instructions were an inaccurate statement of the law. Defendants assert that the Utah Supreme Court's holding in *State v. Gardiner*, 814 P.2d 568 (Utah 1991), supports their proposition that "a citizen is entitled to defend himself against the use of excessive force by a police officer." Defendants therefore argue that they were entitled to use the statutory justification defenses when the party using unlawful force is a police officer. However, in *Salt Lake City v. Smoot*, 921 P.2d 1003 (Utah App.), *cert. denied*, 925 P.2d 963 (Utah 1996), this court, in interpreting *Gardiner*, rejected the proposition that a person may invoke the statutory justification defenses against a charge of resisting arrest. *See id.* at 1010.

In *Gardiner*, the Utah Supreme Court specifically considered whether a person is entitled to forcibly resist an illegal police search. *Gardiner*, 814 P.2d at 571–76. The court first determined that there was no common law right to resist an illegal search, but that any right to resist arrest "must be grounded in the specific code sections under which [defendant] was convicted." *Id.* at 574.

In *Gardiner*, as in the present case, the defendant had been charged under Utah Code Section 76–5–102.4. This section states that "[a]ny person who assaults a peace officer, with knowledge that he [or she] is a peace officer, and when the peace officer is acting within the scope of his [or her] authority as a peace officer, is guilty of a class A misdemeanor." Utah Code Ann. § 76–5–102.4 (1995). The supreme court determined that the only language in this section that could provide the defendant with a right to resist arrest was the "within the scope of authority" language. The court then held that, based on this language, "[w]here the officer is not acting wholly outside the scope of his or her authority, the police action may not be resisted." *Gardiner*, 814 P.2d at 574.

The defendant in *Gardiner* argued that he had a right to physically resist a police officer's search based on Utah Code Section 76–2–406, which provides in part that " '[a] person is justified in using force, other than deadly force, against another when and to the extent he [or she] reasonably believes that force is necessary to prevent or terminate criminal interference with real or personal property,' " *Id.* at 575–76 (quoting Utah Code Ann. § 76–2–406 (1990)). The supreme court noted, however, that this section "does not explicitly mention peace officers," and concluded that "that legislative silence indicates an intention that the actions of law enforcement officers taken within the course of their duties are not within the category of intrusions that may be lawfully resisted." *Id.* at 576.

In *Smoot*, this court discussed the supreme court's holding in *Gardiner* in determining whether a trial court erred in refusing to submit jury instructions dealing with a defendant's alleged right to resist arrest when the police use excessive force. *Smoot*, 921 P.2d at 1008–10. The defendant in *Smoot* appealed a jury conviction for interfering with an officer, in violation of a city ordinance, and argued that the trial court erred in refusing to submit the defendant's proposed jury instructions. *Id.* at 1004, 1008. As in this case, one of the defendant's proposed instructions in *Smoot* was based on Utah Code Section 76–2–402(1). *Id.* at 1008. The de-

fendant also proposed an instruction stating that "a citizen may not use force to resist any arrest unless the officer uses excessive force." *Id.* The trial court refused to submit these and other similar instructions to the jury, but did submit an instruction stating that " '[w]here the officer is not acting wholly outside the scope of his or her authority, the police action may not be resisted.' " *Id.*

In *Smoot*, this court concluded that the defendant's proposed instruction based on "the justification defenses found in title 76 of the Utah Code" was an incorrect statement of the law. *Id.* at 1010. This court noted that in *Gardiner*, the Utah Supreme Court found that "the legislature intended to exclude peace officers acting in the course of their duties from the scope of these [statutory] defenses based upon justification." *Id.* at 1010. This court therefore held that "the statutory justification defenses found in sections 76–2–401 to 406 of the Utah Code do not apply to claims of resisting arrest." *Id.*

In the present case, defendants' proposed instructions were based on sections 76–2–401 and –402 of the Utah Code. The instructions were therefore an inaccurate statement of the law under *Gardiner* and *Smoot.* Thus, the trial court did not err in refusing to submit the instructions.[4]

## VI. Cumulative Error

■ Defendants finally invoke the cumulative error doctrine, arguing that even if the errors committed during the course of the trial were harmless individually, they were cumulatively harmful. Under the cumulative error doctrine, this court "will reverse only if 'the cumulative effect of the several errors undermines our confidence ... that a fair trial was had.' " *State v. Dunn,* 850 P.2d 1201, 1229 (Utah 1993) (citation omitted). As discussed above, defendants have claimed a

number of errors on appeal. However, we have determined that the majority of these claims do not constitute error, and that any errors committed by the court were harmless. After reviewing the record, we conclude that the cumulative effect of any harmless errors committed by the court does not undermine our confidence in the fairness of the trial. *Cf. State v. Palmer,* 860 P.2d 339, 350 (Utah App.), *cert. denied,* 868 P.2d 95 (Utah 1993).

## CONCLUSION

The trial judge's failure to recuse himself does not require reversal, given that defendants have failed to show actual bias by the judge and have not shown actual prejudice resulting from the judge's failure to recuse based on an appearance of bias. The trial judge did not abuse his discretion in excluding character evidence of one of the officers, nor have defendants shown any prejudice resulting from the trial judge's exclusion of this evidence. Defendants have also not shown any prejudice resulting from the exclusion of character evidence of one of the defendants. The trial judge did not make improper comments on the evidence, and did not improperly restrict defense counsel's closing argument. · The trial judge also did not err in refusing to submit defendants' proposed self-defense jury instructions, as the instructions were an inaccurate statement of the law. Finally, there was no cumulative error requiring a new trial. Accordingly, defendants' jury convictions are affirmed.

WILKINS, Associate P.J., concurs.

BENCH, Judge (dissenting):

I respectfully dissent. There were numerous errors and irregularities in this case.

---

4. In *Salt Lake City v. Smoot,* 921 P.2d 1003 (Utah App.1996), this court further stated, "We are not persuaded that defendant's [remaining] requested instructions are correct statements of the law under the *Gardiner* opinion." *Id.* at 1010. This court expressed doubt concerning whether the *Gardiner* decision "stands for the proposition that the use of excessive force is, as a matter of law, outside the scope of an officer's authority." *Id.* We noted that, although the supreme court stated in *Gardiner* that the trial court did not err in finding that the force used by the police was "not excessive," the conclusion based on this language that the use of excessive force is necessarily outside the scope of an officer's authority is not consistent with other language in the opinion or with the supreme court's general analysis. *Id.* Thus, based on this analysis of *Gardiner,* it is not clear that defendants were entitled to any instruction indicating that they were entitled to use force in resisting an arrest where the police officer used excessive force.

During jury selection, the trial judge made statements that manifested at least the appearance of bias (and perhaps actual bias) when he suggested defendants waive the jury and he would find them guilty. At trial, the judge commented on the evidence. The judge excluded evidence relating to the violent character of Officer Lundgren and the peaceful character of one of the defendants. In closing argument, the judge limited defense references to the Rodney King case,[1] the notorious California case involving police brutality, after the prosecution had brought it up. The judge did not allow defendant's proposed jury instruction on self defense, when the proposed instruction was taken directly from the Utah Code as it was interpreted by the Utah Supreme Court in *State v. Gardiner*, 814 P.2d 568 (Utah 1991).

The main opinion concedes that some errors were committed, but concludes they were harmless. When considered separately, the errors and irregularities may not require reversal. When considered together, however, they persuasively demonstrate that these defendants were denied a fair trial. *See Whitehead v. American Motors Sales Corp.*, 801 P.2d 920, 928 (Utah 1990) ("While no one error by itself perhaps mandates reversal, the cumulative effect of the several errors undermines our confidence that defendants were able to present to the jury their theory of the case and that a fair trial was had.").

I believe there is a substantial likelihood of a different outcome had the errors in this case not been made. *See State v. Jacques*, 924 P.2d 898, 902 (Utah App.1996). I would therefore reverse the convictions and remand the case for a new trial.

---

1. *See United States v. Koon*, 833 F.Supp. 769 (C.D.Cal.1993), *aff'd in part and vacated in part*, 34 F.3d 1416 (9th Cir.1994), *aff'd in part and reversed in part*, —— U.S. ——, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).